Town of Chelmsford & others[1] *vs.* Elio DiBiase
& another, trustees, & others[2]
(and a companion case[3]).

Middlesex.   February 4, 1976. — April 6, 1976.

Present: Reardon, Braucher, Kaplan, & Wilkins, JJ.

*Eminent Domain,* Validity of taking. *Housing. Zoning,* Low and moderate income housing.

A taking of land by eminent domain by a town in good faith and for a public purpose was valid notwithstanding a pending application to the board of appeals for a comprehensive permit to build low and moderate income housing on the land pursuant to G. L. c. 40B, §§ 20-23, which after the taking was denied by the board but granted by the Housing Appeals Committee on appeal; the committee's grant of a permit was void. [93-95]

Two bills in equity filed in the Superior Court on August 8, 1972, and December 18, 1973, respectively.

The suits were heard by *Brogna, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Charles G. Kadison, Jr. (Louis N. Levine* with him) for Elio DiBiase & another, trustees, & another.

*Clement McCarthy,* Town Counsel, for the town of Chelmsford & another.

*Danielle E. deBenedictis,* Special Assistant Attorney General, for the Housing Appeals Committee in the Department of Community Affairs.

---

[1] Members of the board of appeals of Chelmsford.

[2] Members of the Housing Appeals Committee, Department of Community Affairs; D & B Home Builders, Inc.; Salem Five Cent Savings Bank.

[3] Elio DiBiase & another, trustees, & another *vs.* Town of Chelmsford & others.

BRAUCHER, J.   An application was filed with the board
of appeals of Chelmsford (board) for a comprehensive
permit to build low and moderate income housing on a
tract of about forty-eight acres, pursuant to G. L. c. 40B,
§§ 20-23, inserted by St. 1969, c. 774, § 1, sometimes called
the Anti-Snob Zoning Act. See Rodgers, Snob Zoning in
Massachusetts, 1970 Ann. Surv. Mass. Law § 18.2. Shortly
thereafter a special town meeting voted to take the tract
by eminent domain for conservation purposes, and an order
of taking was made and recorded. A judge of the Superior
Court has found that the taking was made in good faith
and for a public purpose. He ruled that the filing of the ap-
plication did not prevent the subsequent taking, and judg-
ments were entered declaring that the tract was legally
taken. Under G. L. c. 40B, § 20, the board and the Housing
Appeals Committee in the Department of Community Af-
fairs (HAC) had authority to override local "requirements
and regulations," including zoning by-laws, if not "con-
sistent with local needs." *Board of Appeals of Hanover* v.
*Housing Appeals Comm. in the Dep't of Community Af-
fairs,* 363 Mass. 339, 354-355 (1973) (*Hanover* case). But
we now hold that "requirements and regulations" do not
include a taking made in good faith and for a public pur-
pose, and affirm the judgments. If the power of eminent
domain, granted by the Legislature, is to be overridden
in this way, the Legislature must confer the necessary
authority.

The cases were heard on the pleadings and a statement
of agreed facts, and the judge made findings, rulings, and
an order for judgments. The warrant for a special town
meeting on June 28, 1971, proposed that the town take the
tract by eminent domain for conservation purposes, but
the meeting was adjourned for want of a quorum. A second
special town meeting voted on November 22, 1971, to take
the tract for conservation purposes, but town counsel ruled
that the vote was invalid. On December 6, 1971, the owner
of the tract was D & B Builders, Inc. (D & B), and the
trustees of the Riverside Realty Trust (Riverside) were
the owners by agreement; on that day Riverside for the

first time submitted to the board its application for a comprehensive permit. Notice of a public hearing before the board on the application was published on December 16, 1971; on the same day the selectmen of the town posted a notice for a special town meeting to be held December 27, 1971, for the stated purpose of taking the tract for conservation purposes. The town meeting was held as advertised and the taking voted; an order of taking was executed by the selectmen immediately after the meeting and recorded the next morning.

The board held its hearing on the Riverside application on January 5, 1972, as advertised, despite town counsel's opinion that the tract belonged to the town. The board denied the permit on February 9, 1972, and Riverside took a timely appeal to HAC. HAC denied a motion to dismiss the appeal, held hearings, and on May 10, 1974, granted the comprehensive permit to Riverside. HAC did not decide the issue of the validity of the taking, but left questions relating to title to the courts. The board did not seek judicial review of the HAC decision under G. L. c. 30A, as permitted by G. L. c. 40B, § 22.

Meanwhile, on August 8, 1972, the town and the board sought a declaratory judgment in the Superior Court to determine title to the tract and to determine the jurisdiction of HAC. That court denied an application for a temporary injunction against the HAC hearings. The defendants in that action were Riverside, D & B, a mortgagee of the tract and HAC. On December 18, 1973, Riverside and D & B brought a suit against the town and the selectmen for a declaratory judgment determining that the taking by the town was void or that the time for filing a petition for assessment of damages was stayed until six months after final determination of the two suits. The two suits were consolidated by consent, and were decided together on May 30, 1975.

The judge pointed out that none of the pleadings in either case raised any issue as to whether the taking was for a legitimate public purpose or was not in good faith and for a public benefit, and that there were no facts al-

leged or agreed on which to base a finding or ruling that the taking was not for a public purpose or was not in good faith. He therefore found that the taking was made in good faith and for a public purpose. Judgments were entered in both cases declaring that the tract was legally taken by the town on December 28, 1971, that the HAC grant of a comprehensive permit to Riverside was void, and that the time for filing a petition for assessment of damages under G. L. c. 79, § 18, is extended until six months after the final determination of these cases. Riverside, D & B, the mortgagee and HAC appealed, and we allowed an application for direct appellate review.

The parties present to us the single issue whether G. L. c. 40B, §§ 20-23, prohibited the town from making the taking during the pendency of the application for a comprehensive permit. The parties agreed that since the enactment of the statute in 1969 no unit of low and moderate income housing had actually been constructed pursuant to the statute in the face of opposition by a local zoning board. Two projects in this category, totaling 194 units, were under construction in April, 1975. There had been forty-two appeals to HAC from decisions of local zoning boards; twenty-four had been decided by HAC, and fourteen of those had been appealed to the courts. Exercise of the eminent domain power, it is argued, prevents the construction of low and moderate income housing, contrary to a valid determination that such prevention is not "consistent with local needs." Like exclusionary zoning practices, therefore, the taking frustrates the statutory policy.

The parties do not contest the finding that the taking was made in good faith and for a public purpose. Nor could they. Cf. *Poremba* v. *Springfield,* 354 Mass. 432, 434-435 (1968). The board noted that the conservation commission had had the acquisition of the tract under consideration for more than ten years, and HAC recognized that the tract adjoins 100 acres of town forest. The developer had been negotiating with the town for other types of development since 1968, and did not turn to the present proposal until after the second abortive effort in 1971 to obtain a town

meeting vote authorizing a taking for conservation pur-
poses. Such a taking is authorized by G. L. c. 40, § 8C, but
only by a two-thirds vote of a town meeting. An order of
taking by the selectmen was made pursuant to G. L. c. 79,
§§ 1, 2, and State reimbursement of fifty per cent of the
cost is authorized by G. L. c. 132A, § 11. See *MacGibbon* v.
*Board of Appeals of Duxbury,* 356 Mass. 635, 641 (1970).

We held in the *Hanover* case "that c. 774 confers on
boards of appeals and the Housing Appeals Committee
power to override local 'requirements and regulations,' in-
cluding zoning ordinances or by-laws, which are not 'con-
sistent with local needs.' " 363 Mass. at 355. Neither in
that case nor in the comprehensive description of the
statute by one of its principal draftsmen, however, is there
any suggestion that similar power exists to override the
exercise of the eminent domain power. See Rodgers, Snob
Zoning in Massachusetts, 1970 Ann. Surv. Mass. Law
§ 18.2. Boards of appeals ordinarily have nothing to do
with the taking of land for a public purpose. G. L. c. 40A,
§ 15. "Requirements and regulations" is an apt phrase to
describe limitations on an owner's use of his property.
When they are overridden, he is set free; he is not com-
pelled to act under a comprehensive permit once granted,
but may abandon the project, and dispose of the property
or divert it to another lawful use. A taking is quite differ-
ent; it is not in any usual sense a requirement or a regula-
tion, but a transfer of ownership. If it is overridden, the
effect is not to remove limitations on the rights of the
owner but to change the ownership.

"The taking of property by eminent domain is an attri-
bute inherent in sovereign power. It cannot be contracted
or bartered away. . . . It 'must continue unimpaired in the
State. It is impliedly reserved in every grant. It cannot be
abridged so as to bind future legislation.' " *Burnes* v. *Met-
ropolitan Dist. Comm'n,* 325 Mass. 731, 734 (1950), quoting
from *Eastern R.R.* v. *Boston & Me. R.R.,* 111 Mass. 125,
131 (1872). A power in a local board of appeals or HAC to
prevent the taking of land for any public use would be a
far-reaching power, and we see no basis for distinguishing

conservation purposes from other municipal purposes. If the Legislature had intended to confer such a power, doubtless it would have considered whether there should be exceptions or safeguards. In the absence of any indication of any such intent or consideration, we are not authorized to extend the power granted by balancing one public purpose against another. We are not to be understood as passing on a situation in which good faith or public purpose is negated.

*Judgments affirmed.*