PHEASANT RIDGE ASSOCIATES LIMITED PARTNERSHIP & others[1]
*vs.* TOWN OF BURLINGTON & others.[2]

Suffolk.   January 9, 1987. — April 30, 1987.

Present: HENNESSEY, C.J., WILKINS, NOLAN, & O'CONNOR, JJ.

*Eminent Domain,* Validity of taking. *Housing. Zoning,* Low and moderate
income housing, Constructive grant of relief. *Municipal Corporations,*
Property, Selectmen, Town Meeting. *Civil Rights,* Coercion. *Words,*
"Coercion."

On appeal from entry of summary judgment in favor of unsuccessful appli-
cants for a comprehensive permit for construction of housing units under
G. L. c. 40B, § 21, the so-called Anti-Snob Zoning Act, in their action
against a town and its board of selectmen, which had purported to take
a certain parcel of land by eminent domain "for the purpose of parks,
recreation, and the construction of moderate income housing" at the
same time the parcel was the subject of the plaintiffs' application for
the comprehensive permit, it was held that a municipal land taking,
proper on its face, may be invalid because undertaken in bad faith and
that, on the record in this case, which required the inference that the
town, acting through its town meeting, was concerned only with blocking
the plaintiffs' development, there were sufficient undisputed facts to
warrant partial summary judgment for the plaintiffs on the issue of the

---

[1] Arthur D. Ullian, Robert M. Kargman, Hubert J. Ruping, trustee of
Grandview Farm Realty Trust, Maplewood Construction Company, Inc.
(Maplewood), and BIDC Construction Corp. (BIDC). Ullian and Kargman
are alleged to be general partners in Pheasant Ridge Associates Limited
Partnership, a limited dividend organization which constructs low and mod-
erate income housing subsidized by State and Federal programs. Ruping,
as trustee, and Maplewood own the 14.5 acres subject to the alleged taking
and are alleged to have agreed to sell the parcel to BIDC whose rights have
been assigned to the limited partnership.

For the purposes of this appeal, the plaintiffs may properly be treated
collectively as the owners of the parcel which the town purported to take
by eminent domain.

[2] The members of the board of selectmen of Burlington, individually and
in their official capacities and the members of the town's zoning board of
appeals only in their official capacities. Except when distinctions are neces-
sary among the defendants, we shall collectively refer to them as the town.

town's bad faith and, thus, the purported taking was unlawful and void. [774-780]

In an action by the unsuccessful applicants for a comprehensive permit for the construction of housing units under G. L. c. 40B, § 21, the so-called Anti-Snob Zoning Act, alleging that a town's purported taking of the plaintiffs' land at the time the land was the subject of plaintiffs' application for the comprehensive permit constituted an unlawful taking because done in bad faith, there were insufficient undisputed facts for the judge to order partial summary judgment on the question whether the town's wrongful taking of the plaintiffs' property constituted an interference with their rights by coercion within the meaning of G. L. c. 12, §§ 11H and 11I. [780-782]

In an action against a town and its board of selectmen by the unsuccessful applicants for a comprehensive permit under G. L. c. 40B, § 21, in which the town's board of appeals had failed to render its decision within forty days of October 15, 1985, the last date on which a public hearing on the permit application could be said to have terminated, there were sufficient undisputed facts to warrant partial summary judgment in favor of the plaintiffs declaring that the comprehensive permit was constructively granted pursuant to § 21. [782-783]

CIVIL ACTION commenced in the Superior Court Department on October 21, 1985.

The case was heard by *Thomas R. Morse, Jr., J.*, on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Elizabeth A. Lane* (*Leonard Kopelman*, Town Counsel, & *Barbara Saint Andre* with her) for the defendants.

*Michael S. Gardener* (*Paul D. Wilson* with him) for the plaintiffs.

WILKINS, J. The defendant town, acting through its selectmen, purported to take a 14.5 acre parcel on Center Street pursuant to a unanimous vote of a September 23, 1985, town meeting. The town voted to take the property "for the purpose of parks, recreation, and the construction of moderate income housing which will be subject to the review and approval of Town Meeting." The vote further appropriated $1,130,000 from available funds to pay for the land taking. On October 21, 1985, the selectmen adopted an order of taking which was recorded in the appropriate registry of deeds on November 15.

At the time of the town's purported taking, the Center Street parcel was the subject of an application, filed on June 27, 1985, on behalf of the plaintiffs, for a comprehensive permit under what is sometimes called the Anti-Snob Zoning Act. G. L. c. 40B, §§ 20-23, inserted by St. 1969, c. 774, § 1. The parcel was zoned for light commercial, municipal, and single family residence uses. As subsequently modified, the plaintiffs' proposed development would have 202 apartment units of which at least twenty percent would be available for low and moderate income housing, as defined by the Massachusetts Housing Finance Agency.[3]

Under G. L. c. 40B, § 21 (1984 ed.), a limited dividend organization may submit an application for a comprehensive permit authorizing the construction of low or moderate income housing, as defined in G. L. c. 40A, § 20, in lieu of making application to various municipal boards. The details of the handling of such an application, including any appeal from its denial, are spelled out in *Board of Appeals of Hanover* v. *Housing Appeals Comm.,* 363 Mass. 339, 345 (1973). Burlington had low or moderate income housing in such limited amounts as to qualify land in the town for treatment under G. L. c. 40B, § 21. See G. L. c. 40B, § 20.

The board of appeals held its first public hearing on the application on July 23, 1985. Its next session was held on August 20. The board received reports from various town boards and indicated that it wanted supplemental information from the selectmen and the board of health, which was received by the close of the board's October 15 session. The plaintiffs insisted to the board that the hearing portion of the proceeding was concluded at the close of the August 20 session. The board received some further information by the time of its November 5

---

[3] The plaintiffs' announcement of the proposed development in February, 1985, had produced immediate, substantial, town-wide opposition. An article was placed in the warrant for the May, 1985, town meeting authorizing the taking of the Center Street parcel. On advice of town counsel, however, no motion to take the property was offered, but the town did vote to appropriate funds for an appraisal of the property.

meeting and very little information thereafter. By then, of course, the town meeting had authorized the taking and the selectmen had adopted an order of taking. By the time of the board's November 19 meeting the order of taking had been recorded. The board of appeals denied the application on December 27, relying on the taking as one of the reasons for denial of the application.

The issues in this appeal concern (1) the lawfulness of the town's taking in light of the plaintiffs' assertion that the taking was made in bad faith, (2) whether the defendant town and members of the board of selectmen are liable under G. L. c. 12, § 11I (1984 ed.), and (3) whether the comprehensive permit was constructively granted because the board of appeals did not act seasonably on the application. These issues arise from the partial allowance by a Superior Court judge of the plaintiffs' motion for summary judgment and the immediate entry of a judgment on certain counts of the complaint.

The motion judge filed an extensive memorandum in which he concluded, as the judgment later reflected, that (1) the taking was void because the town acted in bad faith, (2) the town and the selectmen were liable for violating G. L. c. 12, § 11I (the amount of any damages to be determined later), and (3) the comprehensive permit had been constructively granted because the board of appeals did not render its decision within the time required under G. L. c. 40B, § 21.[4] We allowed the town's application for direct appellate review of its appeal.

We agree with the motion judge that the taking was unlawful and void and that the comprehensive permit was constructively granted. We disagree, however, with his conclusion that partial summary judgment should be entered on the claim made under G. L. c. 12, § 11I, that the town and the members of the board of selectmen interfered or attempted to interfere with the plaintiffs' rights by threats, intimidation, or coercion.

1. We consider first the plaintiffs' challenge to the validity of the taking and conclude that the motion judge was correct

---

[4] The motion judge deferred consideration of a claim based on a violation of 42 U.S.C. § 1983 (1982), and the determination of any damage until after the disposition of any appeal from the judgment.

in declaring that the purported taking of the plaintiffs' property was unlawful and void. In reaching this conclusion we hold that a municipal land taking, proper on its face, may be invalid because it was undertaken in bad faith and that, on this record, because there is no dispute as to any material fact on the issue of bad faith, the judge properly entered summary judgment for the plaintiffs on this issue. The absence of any record support for the town's claim that it did not act in bad faith makes this case most unusual and not likely soon to be replicated.

Previous challenges to the motives behind municipal land takings that have appeared facially valid have been unsuccessful on their facts in this court. See *Chelmsford* v. *DiBiase,* 370 Mass. 90, 95 (1976) (where town acted in good faith and for a public purpose, taking of land which was subject of pending application for comprehensive permit under G. L. c. 40B, § 21, is valid); *Poremba* v. *Springfield,* 354 Mass. 432, 434 (1968) (highway taking not adequately alleged to have been made in bad faith, or for the private benefit of private person and not for the public benefit); *Despatchers' Cafe Inc.* v. *Somerville Hous. Auth.,* 332 Mass. 259, 263-264 (1955) (allegations insufficient to state challenge to motives of taking authority where malicious or dishonest motive is disclaimed); *Sellors* v. *Concord,* 329 Mass. 259, 262 (1952) (where town's good faith not challenged, court assumes proposed uses are not pretenses); *Lynch* v. *Forbes,* 161 Mass. 302, 309 (1894) (no question of good faith raised; expediency or necessity for taking is for taking authority). Although challenges to such takings failed in these cases, sometimes on pleading principles no longer applied, each opinion recognized in one way or another that there may be cases in which the exercise of the power of eminent domain may be successfully challenged. Certainly, the use of the power solely to benefit some private person or persons would be action taken in bad faith and grounds for declaring a taking invalid. See *Despatchers' Cafe Inc.* v. *Somerville Hous. Auth., supra* at 263; *Lynch* v. *Forbes, supra* at 309. See also *Moskow* v. *Boston Redevelopment Auth.,* 349 Mass. 553, 573-575 (1965) (Kirk, J., dis-

senting), cert. denied, 382 U.S. 983 (1966). Although the occasions in which a taking on behalf of the United States has been set aside are rare, the Federal courts have recognized the possibility that a condemnation may be arbitrary, capricious, or in bad faith. See *Southern Pac. Land Co.* v. *United States,* 367 F.2d 161, 162 (9th Cir. 1966), cert. denied, 386 U.S. 1030 (1967), citing *United States* v. *Carmack,* 329 U.S. 230 (1946).

Bad faith in the use of the power of eminent domain is not limited to action taken solely to benefit private interests. It includes the use of the power of eminent domain solely for a reason that is not proper, although the stated public purpose or purposes for the taking are plainly valid ones. For example, when a county took land for a training area for its police and fire employees, on which a city planned to construct a sewage treatment plant and, on the facts, the reason for the county's action was to prevent construction of the sewage treatment plant, the power of eminent domain was used in bad faith and the taking was invalid. *Carroll County* v. *Bremen,* 256 Ga. 281, 282 (1986). See *Earth Management, Inc.* v. *Heard County,* 248 Ga. 442 (1981) (taking invalid when county commissioner took land for park in order to prevent construction of hazardous waste disposal facility).

It is not easy to prove that particular municipal action was taken in bad faith. This is particularly true where the significant event is an affirmative vote (here at least a two-thirds vote) of the persons voting at a town meeting on a motion to take a particular parcel of land. Challenges to town meeting action based on a claim that unlawful, improper, or erroneous reasons were advanced at town meeting or elsewhere in support of the challenged action have been unsuccessful. See *Simon* v. *Needham,* 311 Mass. 560, 566 (1942); *Southern New England Conference Ass'n of Seventh-Day Adventists* v. *Burlington,* 21 Mass. App. Ct. 701, 708 (1986). Cf. *Moskow* v. *Boston Redevelopment Auth., supra* at 565-566 (statements of candidates for city council); *Knowles* v. *Codex Corp.,* 12 Mass. App. Ct. 493, 498 (1981) (dicta, not citing this court, that act of Legislature [i.e., General Court] would not be set aside even if all

favorable votes had been induced by bribery). We should not easily attribute improper motives to a town, and to its citizens voting at town meeting, if there were valid reasons that would have supported the town's action. See *Sturges* v. *Chilmark,* 380 Mass. 246, 257 (1980), and cases cited; *Morgan* v. *Banas,* 331 Mass. 694, 698 (1954).

In the case of a corporation we attribute to the corporation the actions, words, and knowledge of its employees acting within their authority. See *Galvin* v. *New York, N.H. & H. R.R.,* 341 Mass. 293, 296 (1960); *Pihl* v. *Morris,* 319 Mass. 577, 581 (1946); *International Underwater Contractors, Inc.* v. *New England Tel. & Tel. Co.,* 8 Mass. App. Ct. 340, 345-346 (1979). In determining the state of mind of a person or group of persons, we consider not only what they have said but we also draw inferences concerning their intentions from what they have done and what they have not done. Although the problem of proof of a municipal corporation's bad faith is more difficult than the problem of such proof with respect to a business corporation, the relevant principles are the same. Recognition in our cases that a bad faith land taking would be unlawful inevitably assumes that it would be possible to prove the bad faith of a town.

There are certain motives or reasons that would be unlawful if they were the dominant reasons for the town's taking.[5] Clearly, taking land solely to block G. L. c. 40B, § 21, low or moderate income housing would be improper. To have taken the site involved in this case to prevent the impact of the proposed development on the water, sewer, traffic, and other problems of the town would not have been action in good faith. The town was not barring other residential development on these grounds. There was another larger development for which a comprehensive permit was sought under G. L. c. 40B at about the same time, and the town did not try to take that property. Problems with what is now called the "infrastructure"

---

[5] We need not define dominant reason with precision in order to decide this case. A showing here that this taking occurred only for the unlawful reason that the town wanted to block the plaintiffs' development is surely enough.

of the town might have warranted the denial of the comprehensive permit as reasonable and consistent with local needs (G. L. c. 40B, §§ 21, 23), but the taking (an indirect and unfairly selective attack on the problem) could not be justified on those grounds.

The only valid justification, in the circumstances, for the taking would be that the town truly intended that the land should be used for the purposes for which it was taken. The record is clear that in recent years the town had studied its needs for parks and recreation and that neither the Center Street site nor any parcel in the general vicinity of that site had been considered for acquisition for park or recreational uses. There is no indication in the record that before the plaintiffs' proposal was announced any town board was seeking to provide low and moderate income housing on or near the site.

The matter of taking the subject site came forward only when the plaintiffs' proposal became known. Although not controlling, the absence of any prior town interest in the site or its neighborhood is instructive on the matter of good faith. See *Chelmsford* v. *DiBiase,* 370 Mass. 90, 93 (1976) (interest in acquisition of site taken by eminent domain had been expressed for years prior to possibility of project proposed under G. L. c. 40B).

The manner in which the town dealt with the attempted acquisition of the subject parcel was not in accord with its usual practices. The town agencies, such as the housing authority, recreation commission, conservation commission and planning board, that were responsible for town activities in the areas for which the land was to be taken were not consulted, as they normally would have been, either as to the merits or feasibility of the proposed use or the cost of any such use. The purposes for which the site was to be taken were not known to the town's finance committee, in Burlington called the ways and means committee, or to the town's capital budget committee, prior to the September 23 town meeting. Those purposes for which the taking was to be proposed were developed by the selectmen and town counsel within minutes before the commencement of the town meeting.

The record requires the inference that the town, acting through its town meeting, was concerned only with blocking the plaintiffs' development. We see no dispute as to any material fact barring an award of summary judgment on this point.[6] The public purposes for which the site purportedly was to be taken were not purposes for which the town intended in good faith to take and use the property. They were selected as a device in the erroneous belief that, as generally lawful public purposes, they would make the taking proper.[7]

The presentation by the chairman of the board of selectmen of the motion under the September 23 warrant article shows beyond question that the town meeting was being asked to consider the motion, not on the merits of the acquisition of the site for uses stated in the motion, but to bar the plaintiffs' development.[8] The town is not bound by the statements of the

---

[6] The town argues that the judge should have allowed its motion to strike substantial parts of the plaintiffs' affidavit material in support of summary judgment. The judge correctly noted that there was no dispute as to a material fact on the bad faith issue. Some affidavit material was admissible to show what information had been given to the town, its selectmen, and its town meeting members concerning various matters and was not hearsay for that purpose.

[7] In fact, moderate income housing by itself is not clearly a proper purpose for the taking of land (*Massachusetts Home Mortgage Fin. Agency* v. *New England Merchants Nat'l Bank*, 376 Mass. 669, 694 [1978]), and, in any event, land taken for park purposes may not generally be used for an inconsistent purpose without legislative approval, and thus, if the taking were valid, the right to build moderate income housing on the site would at best be in doubt. See G. L. c. 45, § 7 (1984 ed.); *Foster* v. *Worcester,* 164 Mass. 419 (1895).

[8] The chairman of the board referred to a letter he had recently received from the Secretary of the Executive Office of Communities and Development expressing disapproval of the taking as "effectively removing the property from consideration for this rental housing, and nullifying the developers' application for a comprehensive permit" under G. L. c. 40B. The chairman identified as a threat the letter's suggestion that the town might cease to be eligible for State discretionary funds if it did not address its housing needs. The chairman added, "So, the important piece of information here is that the state has acknowledged that if we take this land, that we would in fact nullify the application of a comprehensive permit for the apartments. A lot of people wanted to know if it would or not, and the state says that it does. That's assuming, however, that the town is taking the land for public purpose. So we, the board of selectmen, felt that to appropriately act as you

chairman of the board of selectmen, nor are those statements admissions that may be used against the town.[9] The town is bound, however, when, after hearing the chairman's uncontested remarks and without any consideration by any town agency or the town meeting itself of the merits or the relative merits of the acquisition of the site for the purposes stated, the town meeting voted to take the property.

We conclude, as noted earlier, that the portion of the judgment declaring the purported taking unlawful and void should be affirmed.

2. The town and the board of selectmen also challenge that portion of the judgment that states that "the defendant Town and defendant Board of Selectmen by their actions violated G. L. c. 12, § 11I."[10] Section 11I incorporates § 11H and in doing so provides, among other things, that any person whose exercise or enjoyment of rights secured by the Constitution or laws of the Commonwealth has been interfered with, or attempted to be interfered with, by threats, intimidation, or coercion may maintain an action against the wrongdoer. There is no

---

directed us to in May, that we should bring forth an article that would legitimately take the land for a public purpose. Parks and recreation is a legitimate public purpose to take land." He then continued: "[B]asically the state has gotten wind of what we're doing here, and if any of us want to try and con the state that we're taking it for a different reason, we're really kidding ourselves. So the state knows what we're trying to do. We have, in essence, found a legitimate reason to take the land and have set that forth in the article that has now moved on the floor." He added the following: "Therefore, if the wish of this body is to follow through with what it started back in May, then in fact you have an article before you for the amount of money that's legally been set forth by appraiser and an article that the Board of Selectmen and Town Counsel feels is legal and defendable and has precedence in terms of having been done before and succeeded and been taken before."

[9] A municipality is not bound by statements of elected officials made in election campaigns (*Moskow* v. *Boston Redevelopment Auth.,* 349 Mass. 553, 565-566 [1965]) or not made as part of the official action of a municipal board (*id.* at 564).

[10] The judge made no decision concerning the liability of the board of appeals on the count based on G. L. c. 12, § 11I. The judge does not explicitly state whether the selectmen violated § 11I in their official or individual capacities or both.

doubt that the plaintiffs, taken collectively, had the right to seek a comprehensive permit with respect to the Center Street site. There is also no doubt that the purported but invalid taking interfered with the plaintiffs' rights, at least by casting doubt on their ownership of the land and causing them to incur the expenses of this litigation.

The judge concluded that the wrongful taking of property was "a coercive act; especially as done in this case." He based the § 11I liability of the board of selectmen and the town solely on the ground that the taking was coercion within the meaning of G. L. c. 12, §§ 11H and 11I. We do not agree.

Although the purported taking of the plaintiffs' property was unlawful because done in bad faith, the taking did not itself interfere or attempt to interfere with the plaintiffs' rights by coercion. The taking was an attempted direct, preemptive act and did not seek to coerce any plaintiff to do or not to do anything. Legislation, even unlawful legislation, lacks any quality of coercion when that legislation seeks to eliminate the rights of a person and does not seek to force that person unwillingly to do or not to do something otherwise lawful.[11]

The plaintiffs argue further that at least two selectmen made statements to the effect that they would take any action necessary to stop the development, that all the selectmen acquiesced in those statements and efforts to block the development, and that these statements were threats and intimidation within the meaning of those words incorporated into § 11I. These words do not threaten a person with arrest or physical eviction (see *Batchelder* v. *Allied Stores Corp.,* 393 Mass. 819, 823 [1985]), nor are they unquestionably words threatening physical harm (see *Bell* v. *Mazza,* 394 Mass. 176, 179-180 [1985]). We think

[11] In the dissent in *Redgrave* v. *Boston Symphony Orchestra, Inc., ante* 93, 104 (1987) (O'Connor, J., dissenting, joined by Lynch, J.), two Justices of this court concluded that coercion involved "restraint or domination of another's will" and appeared "to refer to restraint accomplished by physical force." Certainly there is no such coercion shown in this case. To dispose of the § 11I issue as it relates to a taking being coercion, and *without further defining* coercion, we need only conclude that an invalid land taking does not interfere or attempt to interfere with the landowner's rights in the land by coercion.

the question whether the selectmen, or any of them, engaged in conduct prohibited by § 11I cannot be resolved on a motion for summary judgment because there is a dispute as to material facts shown on the summary judgment record. If the trier of fact concludes that the selectmen's words could reasonably be understood only to express an intention to use lawful means to block the development, those words would not be a threat, intimidation, or coercion actionable under § 11I. See *Bell* v. *Mazza, supra* at 183.

We decline to reach, on review of the partial summary judgment, certain issues not decided below which may not have to be decided at any time in the course of the litigation. We have not decided that we will follow decisions of the Supreme Court of the United States construing similar but not identical language in 42 U.S.C. § 1983 (1982), and other civil rights laws, particularly conclusions expressed in opinions released after G. L. c. 12, §§ 11H and 11I, were enacted. We decline now to decide whether under § 11I we will adopt a rule of qualified good faith immunity for public officials.[12] See *Harlow* v. *Fitzgerald,* 457 U.S. 800, 818 (1982). The town does not argue that it is entitled to the same immunity as to acts of its agents, and it may well be right in not making that claim. See *Owen* v. *Independence,* 445 U.S. 622, 650 (1980).[13]

3. The judge correctly ruled that the comprehensive permit was constructively granted pursuant to G. L. c. 40B, § 21. He so concluded because the board of appeals failed to render its decision within forty days of October 15, 1985, the last date on which a "'public hearing' on the permit application can be said to have terminated."

---

[12] Although we conclude as a matter of law that the taking was not made in good faith, there is contested record evidence whether the selectmen thought that what they were proposing was unlawful. They consulted town counsel and may have acted in an objectively reasonable way in concluding that they were pursuing an available legal method of stopping the development.

[13] There is no discussion in the briefs, and none we have found in the record, as to the applicability, if any, of G. L. c. 258 (1984 ed.), the Massachusetts Tort Claims Act, to an action against a municipality or municipal officials under G. L. c. 12, § 11I.

A board of appeals must hold a public hearing within thirty days of the receipt of an application for a comprehensive permit and must render a decision within forty days after termination of the public hearing or else the application will be deemed to have been allowed. G.L. c. 40B, § 21. Unlike G. L. c. 40A, § 15 (1984 ed.), concerned with appeals to boards of appeals on zoning matters, the relevant statute does not explicitly state a time from its filing within which the board of appeals must act on an application for a comprehensive permit. Here the board held its first hearing on July 23, 1985, and held continued sessions on August 20, September 26, October 15, November 5, and November 19, 1985. On December 27, within forty days of November 19, the board voted to deny the application.

The only argument of substance the town advances here on this issue is the assertion that G. L. c. 40B, § 21, does not authorize a determination that there has been a constructive grant of a comprehensive permit when the board's decision is made within forty days of the date of the last scheduled hearing. The forty-day period runs from the date of the last session at which interested persons presented information and argument. *Milton Commons Assocs.* v. *Board of Appeals of Milton,* 14 Mass. App. Ct. 111, 115 (1982). The date may be even earlier if a board of appeals has not conducted the public hearing expeditiously, scheduling adjourned sessions at reasonable intervals in the circumstances.

There was no meaningful hearing on November 19. We need not decide at what earlier date the hearing should be treated as concluded. The town's suggestion that there is a disputed fact whether the board was reasonable in holding the hearing open until November 19 is not supported by references to the record material. Our view of the record indicates that there is no dispute of material fact on the question of the reasonableness of the delay.

4. We affirm the judgment in so far as it declares (paragraph A) the purported taking to have been made in bad faith and to be void and declares (paragraph C) that the comprehensive permit was constructively granted. We vacate the portion of the

judgment (paragraph B) that entered judgment for the plaintiffs on their G. L. c. 12, § 11I, claim against the town and board of selectmen.

*So ordered.*