Brassard, J.
The plaintiffs in this action, HTA Limited Partnership, Timothy K. Hanna, and CMA Realty Trust (collectively, “plaintiffs”), filed suit against the Massachusetts Turnpike Authority (“Authority”), alleging an invalid taking of real property pursuant to the power of eminent domain. The plaintiffs seek to file a second amended complaint alleging two additional theories of recovery, Unconstitutional Application of General Constitutional Authority to Construct Parking Facilities for Use Along the Massachusetts Turnpike (Count IV), and Taking of Land in Excess of What Was Necessary to Achieve the Alleged Intended Public Purpose (CountV). In support of these claims, the plaintiffs also seek to add facts alleging that the Authority’s taking was made in bad faith and for ulterior motives.[2] The plaintiffs argue that the amendments should be allowed because the two additional theories of recovery are derived from the same injuries they suffered as a result of the Authority’s wrongful conduct, and the additional factual allegations were not revealed until after the filing of the first amended complaint. In opposition, the Authority contends that the new counts fail to state a claim upon which relief can be granted, and the additional factual allegations have no bearing on the Authority’s intent at the time of the taking. For the following reasons, the plaintiffs’ motion to amend is ALLOWED.
BACKGROUND
The second amended complaint alleges the following facts.
In 1994, CMA Realty Trust (“CMA”) owned a parcel of real property located at 1672 Worcester Road in Framingham, Massachusetts (“locus” or the “property”). The rear of the locus abuts the Massachusetts Turnpike west of exit 12 and is adjacent to a large commercial real estate development known as the “9/90.”
During the early 1990s, the Authority began a “park and ride” program along the turnpike to reduce the number of single occupant vehicles and encourage the use of multiple occupancy vehicles. This, in part, was in response to issues raised by the Federal Clean Air Act. The Authority conducted several feasibility studies in 1993 and 1994, which suggested that a park *619 and ride area, where commuters meet to join with others and travel the turnpike in a single car for the remainder of their commute, was needed in the area of exit 12 of the turnpike. The studies indicated that 1,500 park and ride spaces were needed along the turnpike from Auburn to Weston, and that there could be a demand for 250 spaces in the area of exit 12.
Maps created in connection with the feasibility studies suggested that the locus was an appropriate site for a park and ride facility. Representatives of the Authority contacted Timothy K. Hanna ("Hanna”), who had leased the property from CMA, to inquire about his interests in selling the property. Hanna offered to enter into a long term lease with the Authority at rates similar to other park and ride sites leased by the Authority. Hanna’s refusal to sell the property without conditions prompted the Authority to take the property by eminent domain in July 1994.
A park and ride facility was constructed on the locus with 109 parking spaces; however, within a year after the taking, only approximately ten (10) commuters used the facility on a daily basis. Currently, a portion of the park and ride lot is utilized by an automobile dealership for storage and sales, and another portion is slated to accommodate construction of an access road to the 9/90 development.
In 1997, the Authority publicly announced intentions to lease land adjacent to the turnpike to private businesses as a means of raising revenue. The Authority entered into a lease with Boston Properties, Inc., which plans to construct a hotel and office park on the ovals of land isolated by the interchange ramps of the turnpike. The construction of an access road across the locus will serve both the 9/90 development site and a connector bridge to the isolated ovals of turnpike land leased to Boston Properties.
The plaintiffs filed suit against the Authority in 1998, and thereafter, this court (Borenstein, J.) allowed the Authority’s motion to dismiss all claims against it [8 Mass. L. Rptr. 400). In May 2001, the Appeals Court (Docket No. 98-P-1246) reinstated Counts VI, IX, and X of the First Amended Complaint permitting the plaintiffs to pursue the theory that the Authority proceeded with the taking in bad faith and for ulterior motives.
DISCUSSION
Under Mass.R.Civ.P. 15(a) a party may amend his pleading only by leave of the court, and “leave shall be freely given when justice so requires.” See Mass.R.Civ.P. 15(a). The opposing party bears the burden of establishing a “good reason” to deny the amendment. See DiGregorio v. Commonwealth, 10 Mass.App.Ct. 861, 862 (1980). An amendment may only be construed as “futile” if the amended complaint would be the subject of a successful motion under Mass.R.Civ.P. 12(b)(6). See Jessie v. Boynton, 372 Mass. 293, 295 (1977).
When examining the legal sufficiency of a complaint challenged by a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), the court must take as true all of the plaintiffs’ factual allegations and draw all inferences therefrom in the light most favorable to the plaintiffs. See Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). A complaint is sufficient “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Id. Additionally, when the plaintiff alleges bad faith, the complaint must contain specific factual allegations supporting the general allegation. See Mass.R.Civ.P. 9(b). Facts indicating abad faith or an arbitrary or capricious taking may include allegations that (1) the government body taking the property did not follow its “usual practices” to conduct the taking; and (2) the site chosen had not been considered at all or not considered suitable for the stated purposes given for the taking. See Pheasant Ridge, 399 Mass. at 778.
The Authority contends that the plaintiffs’ motion to amend the first amended complaint is futile and should be denied because (1) the Appeals Court has held that the Authority was permitted to take the property for the purpose of constructing a park and ride facility; (2) the Authority’s enabling statute authorizes the taking of sites abutting the turnpike; and (3) the court cannot invalidate a taking solely due to the amount of land taken. The Authority also contends that the additional allegations of fact the plaintiffs seek to include are irrelevant because they do not allege that the planned Boston Properties’ development was conceived of at the time of the taking.[3]
Whether a taking is for a public purpose is subject to judicial review. See Luke v. Massachusetts Turnpike Auth., 337 Mass. 304, 308 (1958). A taking may be proper on its face but found to be invalid if it was undertaken in bad faith. See Pheasant Ridge Assocs. Ltd. Partnership v. Burlington, 399 Mass. 771, 775 (1987). If the sole, or at least dominant, reason for taking the property was to benefit a private party, the taking cau be held to have been undertaken in bad faith, and the plaintiffs would be entitled to relief. See id. at 775-77.
In Count IV, the plaintiffs allege that the Authority did not adhere to customary criteria in selecting the property as a site for a park and ride facility. Specifically, the plaintiffs argue that ease of ingress and egress was a principal criterion for selection of a site, and the fact that commuters must exit the turnpike in order to utilize the park and ride lot, violates the spirit and intent of the Authority’s enabling statute. The plaintiffs further allege in Count V that the Authority took more land than was necessary to achieve the intended public purpose. According to the plaintiffs, approximately five and one-half acres were taken to fulfill the necessary 250 spaces as suggested by the feasibility *620 studies, when in actuality, 250 spaces only occupy approximately forty percent (40%) of the property.
Taken in a light most favorable to the plaintiffs, these factual allegations tend to support the plaintiffs’ claims of bad faith and satisfy the specificity requirement urged by Mass.R.Civ.P. 9(b). Counts IV & V propose theories- of recovery that are closely aligned with the basic claim that survived in the Appeals Court: the Authority proceeded with the taking in bad faith and for ulterior motives. The plaintiffs’ motion to amend is ALLOWED.
ORDER
For the foregoing reasons, the plaintiffs’ motion to amend the first amended complaint is ALLOWED.

 Additionally, the Plaintiffs seek to withdraw HTA Limited Partnership as a party to this case because it has no ownership interest in the subject property and has ceased to exist as a legal entity since 1998. Furthermore, the Plaintiffs seek to remove Counts I, II, III, IV, V, VII, VIII, XI, XII, XIII, and XIV of their First Amended Complaint, which were either waived or dismissed by the Appeals Court. The Plaintiffs seek to renumber the surviving Counts VI, IX, and X as Counts I, II, and III. The Authority does not object to the withdrawal of HTA Limited Partnership nor to the removal and renumbering of the counts.

 The Authority’s reliance on case law suggesting that “it is solely within the province of the Legislature, or its delegates, to determine the necessity for the taking and the quantum of estate needed to fulfill the public purpose!,]” is without merit. The court reads “quantum of estate” to refer to the property interest taken rather than the amount of land. See Mugar v. Massachusetts Bay Transp. Auth., 28 Mass.App.Ct. 443, 446 (1990).