Gardner, J.
More than five years after their acceptance of the purchase deed to the defendant’s home, plaintiffs Henry L. and Linda R. Farineau (“Farineaus”) commenced this action against Mary Rose Easley (“Easley”) for her alleged failure to have filed with the local board of health a copy of the Title V report of the inspection of her property’s subsurface sewage disposal system (“SSDS”). The Farineaus’ complaint sought damages for Easley’s alleged breach of contract, negligent misrepresentation, and Title V “strict liability.” Summary judgment was entered for Easley, and this appeal by the Farineaus followed.
The parties’ Mass. R. Civ. P., Rule 56, summary judgment materials indicate the following: On November 29, 1998, the parties executed a standard form agreement for the Farineaus’ purchase of Easley’s single family home at 112 Old County Road in Lancaster. Added to the standard form were six “additional provisions,” including the following paragraph 29F:
Title V Notice. The parties acknowledge that the property is served by an On-Site Subsurface Sewage Disposal System (the “Disposal System”). Pursuant to the requirement of Title V of the State Environmental Code (310 CMR 15.300) (‘Title V”) this Disposal System HAS BEEN inspected in connection with the transfer of the property. SELLER HAS engaged, at their expense, a licensed System Inspector to prepare and file the System Inspection form. PASS PAGE OF REPORT IS ATTACHED. SELLER TO PROVIDE ENTIRE REPORT PRIOR TO CLOSING. See Exhibit 1 (Purchase and Sales Agreement).
In preparation for the sale of her home and at her own expense, Easley had the SSDS inspected 15 months prior to the purchase and sale agreement by Bradford S. Leach (“Leach”), a licensed system inspector approved by the Massachusetts Department of Environmental Protection. The first or “pass” page of Leach’s August 18,1997 report stated that the SSDS passed the Title V inspection. Immediately below Leach’s signature on the inspection form was the following printed provision: “The System Inspector shall submit a copy of this inspection report to the approving authority within thirty (30) days of completing this inspection.” In compliance with para. 29F, a copy of the report’s “pass page” was attached to the purchase and sale agreement.
*129 Henry Farineau testified in deposition that he and his wife received a complete copy of the Title V inspection report at or before the closing, and that they and their mortgage bank’s attorney accepted the report. Paragraph 13 of the parties’ purchase and sale agreement provided:
Acceptance of Deed. The acceptance of a deed by the BUYER... shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, such as are, by the terms hereof, to be performed after the delivery of said deed.
Title to the property passed to the Farineaus on January 15, 1999, and the deed was recorded on January 19,1999.
Easley averred that during the 30-year period in which she, her now deceased husband and their children resided in the Lancaster house, there were no problems with the SSDS. Similarly, Henry Farineau conceded that the system functioned properly, without incident, for the entire five-year period between the Farineaus’ acceptance of the deed and their commencement of this suit.
Henry Farineau’s deposition, laden with hearsay, is the primary source in the record of the somewhat confused chronology of events subsequent to the Farineaus’ 1999 purchase of the property. Farineau testified that when he and his wife decided in early 2003 to build an addition on the house, he telephoned the Nashoba Valley Board of Health (“Nashoba Valley”) to obtain another copy of the 1997 SSDS inspection report. Farineau testified that he was told by an employee that Nashoba Valley did not have a report copy in their files.[2] The Farineaus subsequently located their own copy of the 1997 report, and submitted it with their request for approval of a house addition to the Lancaster Board of Health (“Lancaster”). By letter dated April 22, 2003, Lancaster stated that the 1997 report was “apparently” not submitted by the first inspector, and that there were problems with both the 1997 report and the Farineaus’ addition proposal.[3] Lancaster concluded that it would take no action on the Farineaus’ addition request until a new Title V inspection report was submitted for review.
Sometime in the summer of 2003, the Farineaus had the SSDS inspected by Bradford S. Leach, Jr. (“Leach, Jr.”), the son of the 1997 inspector. Once again, the SSDS passed the Title V inspection.
The Lancaster letter made no reference to “soil tests.” Based on his own “research” and alleged statements by unidentified employees of either Nashoba Valley or Lancaster, Henry Farineau concluded that the “town” required “soil tests” for systems in certain sections of Lancaster in addition to the Massachusetts Title V requirements that the SSDS had already satisfied. The Farineaus arranged for those additional soil tests in October, 2003, and the property did not pass. Based on the soil tests, Leach, Jr. issued another Title V report showing that the *130 SSDS had failed. The Farineaus claim that they were required to install a new SSDS at a cost of $25,000.00 in 2004, seven years after the Title Y inspection at issue in this case.
1. It is elementary that Easley, as the Rule 56 moving party, bore the burden of establishing both the absence of any genuine issue of material fact and her entitlement to summary judgment as a matter of law. Finney v. Madico, Inc., 42 Mass. App. Ct. 46, 49 (1997). We conclude that Easley’s assertion of the “acceptance by deed” provisions of para. 13 of the parties’ purchase and sale agreement effectively satisfied her Rule 56 burden as to Count I of the complaint by negating the Farineaus’ claim for breach of contract. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
The general rule in Massachusetts is that a buyer’s “acceptance of a deed ordinarily merges all prior covenants in the deed, discharging all obligations contained in the purchase and sale agreement except those specified in the deed itself.” Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 441-442 (1975), citing, inter alia, Pybus v. Grasso, 317 Mass. 716, 717 (1945). The parties in this case expressly incorporated the doctrine of merger into their purchase and sale agreement by providing in para. 13 for the Farineaus’ “acceptance by deed” of Easley’s full performance of the agreement. Easley is contractually entitled to the “benefit of [that] language.” Solomon v. Birger, 19 Mass. App. Ct. 634, 642 (1985).
We reject the Farineaus’ contention- that this case falls within the “narrow exception” to the merger doctrine applicable to promises that are additional or collateral to the main promise to convey the property and are, thus, not necessarily merged with the deed. See McMahon v. M & D Bldrs., Inc., 360 Mass. 54, 59-60 (1971). As explained by the Appeals Court in Solomon, supra, the exception to the merger doctrine has been primarily limited to cases involving “house builders” where there was “a separate agreement to construct or repair a building upon the premises to be conveyed” that was to be performed after delivery of the deed. Id. at 642, citing McMahon, supra at 59-60; Holihan v. Rabenius Bldrs., Inc., 355 Mass. 639, 642 (1969); and Lipson v. Southgate Park Corp., 345 Mass. 621, 625-626 (1963). See also Pedersen v. Leahy, 397 Mass. 689, 691-692 (1986). In this case, para. 29F required both the completion of a Title V inspection prior to execution of the purchase and sale agreement and the attachment of the “pass page” of the inspection report to that agreement. The inspection was completed 15 months prior to the parties’ transaction, and the report was to have been filed within 30 days of the inspection. The Farineaus accepted the Title V report at the closing. Nothing in the unambiguous language of para. 29F suggests any intent or expectation by either party that Eas-ley would undertake any additional Title V action subsequent to the conveyance of the property, or that she was obligated to do so.
Accordingly, the motion judge properly entered summary judgment in favor of Easley on the Farineaus’ claim for breach of contract.
2. The merger doctrine does not, however, bar claims for intentional fraud and deceit. Shawmut-Canton LLC v. Great Spring Waters of America, Inc., 62 Mass. App. Ct. 330, 335 (2004). Count II of the Farineaus’ complaint sought recovery for Easley’s alleged misrepresentation in “failing to disclose that the property had not passed a Title V examination.” Summary judgment in favor of Easley would have been required on any claim for intentional misrepresentation by her. First, the Farineaus failed to rebut Easley’s Rule 56 averments that, in compliance with her contractual obligations, she retained Leach to inspect the SSDS and to prepare and file a report, and that she was unaware until this lawsuit was filed that the Farineaus were alleging that the inspection report had not been filed with the local approving authority. Second, based on Leach’s 1997 report submitted to Easley, *131 the property had in fact passed a Title V examination. In short, the record is devoid of evidence of Easley’s knowledge of any problem with the 1997 inspection report, or of her intent to deceive the plaintiffs.
The Farineaus now argue on this appeal that they are entitled to a trial on the merits on a claim of “negligent’ misrepresentation.[4] Their recovery on that theory required proof that Easley negligently made a false statement of material fact to induce action by the Farineaus, who relied on that statement to their detriment. McEneaney v. Chestnut Hill Realty Corp., 38 Mass. App. Ct. 573, 575 (1995). The material statement at issue is that the SSDS passed a Title V inspection in 1997. What is missing from the Farineaus’ claim is any clear evidence that this statement was false.
The Farineaus contend that the 1997 report was not submitted to the “approving authority” by Leach; that if it had been properly filed, the report would have been rejected because the 1997 inspection did not include “soil tests,” that the property would not have passed any soil tests, and that they would not have purchased the property without a passing Title V inspection. First, there is no evidence that Leach actually failed to file his inspection report. Henry Farineau’s testimony as to alleged statements by unidentified Nashoba Valley employees that the report was not on file was hearsay, which the motion judge was free to disregard in deciding Easley’s Rule 56 motion. Madsen v. Erwin, 395 Mass. 715, 721 (1985); TLT Constr. Corp. v. A. Anthony Tappe & Assocs., Inc., 48 Mass. App. Ct. 1, 12 (1999). The Lancaster statement that the 1997 report was “apparently” not on file permitted either of two competing inferences, namely, that the Lancaster Board of Health had actually searched their records, unsuccessfully, to find the report, or that the Board simply accepted the Farineaus’ unsubstantiated representation to them that the report had not been filed. Further, there is no evidence that the “soil tests” the Farineaus elected to have done in 2003 were a required element of a Title V inspection in 1997, that the property would not have passed soil tests in 1997, or that Leach’s inspection report would have been rejected on that or any other basis. If the Farineaus had offered only their Rule 56 materials as evidence at trial, judgment would have entered for Easley.
What is before us on this appeal, however, is a motion for summary judgment, which the opposing party can defeat by gaining only a “toehold” in the evidence. Shimer v. Foley, Hoag & Eliot LLP, 59 Mass. App. Ct. 302, 314 (2003), quoting Marr Equip. Corp. v. I.T.O. Corp., 14 Mass. App. Ct. 231, 235 (1982). Viewing the evidence exclusively in the Farineaus’ favor, and drawing every inference in support of their case, Fuller v. First Financial Ins. Co., 448 Mass. 1, 5 (2006), we conclude that the Lancaster letter is sufficient, marginally, to warrant a trial on the Farineaus’ negligent misrepresentation claim. Viewed strictly, and indulgently, in the Farineaus’ favor, the Lancaster letter may be construed as some evidence that the 1997 Title V inspection report was not filed and approved by the local author *132 ity; and that highwater table levels and other discrepancies in the 1997 report noted by Lancaster raise an issue as to whether Leach’s inspection report would have been approved if filed in 1997. The allowance of summary judgment in favor of the defendant on Count II of the complaint is vacated.
3. The Farineaus’ failure to include in their brief to this Division any analysis or argument on complaint Count III for “strict liability” constituted a waiver of appellate review of the trial court’s summary judgment on that claim. Dist./Mun. Cts. R. A. D. A., Rule 16(a) (4). See generally Carter v. Seto, 2005 Mass. App. Div. 62, 64 n.6. Summary judgment for Easley on Count III of the Farineaus’ complaint is, therefore, affirmed.
We note briefly that pursuant to 310 CMR §15.025, the authority to implement and enforce Title V regulations is vested in the “Approving Authority,” “Local Approving Authority” and the State Department of Environmental Protection. The Farineaus did not advance any legal authority, in the trial court or on this appeal, for their implicit contention that there exists a private cause of action for a violation of Title V.
Accordingly, summary judgment for the defendant on Count I of the complaint for breach of contract and on Count III for “strict liability” is affirmed. Judgment for the defendant on Count II for negligent misrepresentation is vacated, and this case is returned to the Clinton Division for trial.
So ordered.

 In affidavits filed in opposition to Easley’s summary judgment motion, both Farineaus asserted that Leach was obligated to file the 1997 inspection report with the Lancaster Board of Health, not the Nashoba Valley Board of Health.

 The Lancaster letter stated that the 1997 report “indicates a 4-bedroom dwelling, which is inconsistent with the July 25, 1961 Septic System Permit, which was issued for 3 bedrooms. Page #6 indicates a question as to the length of the leaching trenches. Page #9 indicates the distribution box is 48 inches below grade, and Page #10 indicates that the seasonal high groundwater is 8 feet. This area of Town is known for a much higher seasonal high groundwatertable [sic]. In regards to the addition request — the sketch must show the horizontal distance of the proposed sauna tubes to the existing septic tank.”

 In Sound Techniques, Inc. v. Hoffman, 50 Mass. App. Ct. 425 (2000), the Appeals Court held that a merger or integration clause in a commercial lease barred any claims for the defendant’s prior negligent oral misrepresentations. The Court stated: ‘To ignore a merger clause and allow recovery for a negligent misrepresentation does little to promote honesty and fair dealing in business relationships. An individual who makes negligent misrepresentations has honest intentions but has failed to exercise due care. (Citation omitted). As we read Bates v. Southgate, 308 Mass. [170], 182 [1941], it is intentional misconduct that justifies judicial intrusion upon contractual relationships in order to prevent the wrongdoer from securing contractual benefits for which he had not bargained.” Sound Techniques, supra at 432-433. In this case, the parties’ contract was a purchase agreement rather than a lease, that contained an “acceptance by deed” clause instead of an integration provision. The alleged misrepresentations were written.