STEVEN KENNIE & another[1] *vs.* NATURAL RESOURCE
DEPARTMENT OF DENNIS & another.[2]

Barnstable. March 3, 2008. - July 10, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Massachusetts Civil Rights Act. Municipal Corporations,* Conservation
commission. *Practice, Civil,* Motion to amend.

In a civil action alleging, in part, violations of the Massachusetts Civil Rights
   Act, G. L. c. 12, § 11I, arising out of the plaintiffs' efforts to apply for and
   obtain an order of conditions from a town's conservation commission in
   order to construct a pier and dock off the waterfront edge of the plaintiffs'
   property, the judge erred in granting summary judgment in favor of the
   defendants, where the evidence, considered in the light most favorable to the
   plaintiffs, indicated that the town's shellfish constable interfered or at-
   tempted to interfere with the plaintiffs' constitutionally protected right to
   make improvements on their property [759-763], and that the constable's
   interference could reasonably be found to have been accomplished through
   coercion, including both verbal statements and actions taken to effectuate
   those statements [763-765].
In a civil action, the judge did not abuse her discretion in denying the plaintiffs'
   motion to amend their complaint to reinstate claims that they had previ-
   ously removed shortly before the case was remanded from a Federal District
   Court to the Superior Court. [765-766]
This court declined to address a claimed violation of the plaintiffs' right to peti-
   tion, a theory that was absent from the complaint and unsupported by any
   citation to cases applying such constitutional protection in similar cir-
   cumstances. [766]

CIVIL ACTION commenced in the Superior Court Department on
May 16, 2002.

A motion to amend the complaint was heard by *Elizabeth B.
Donovan,* J., and the case was heard by *Robert J. Kane,* J., on
motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

[1]Julia Lane Hagen.
[2]Alan S. Marcy.

*Douglas H. Wilkins* for the plaintiffs.

*John J. Davis* for Alan S. Marcy.

*Leonard H. Kesten* for Natural Resource Department of Dennis.

BOTSFORD, J. The plaintiffs Steven R. Kennie and Julia Lane Hagen, husband and wife, own waterfront property on the Bass River in Dennis.[3] This case, brought in part under the Massachusetts Civil Rights Act, G. L. c. 12, § 11I (Act), arises out of the plaintiffs' efforts to apply for and obtain an order of conditions (permit) from the conservation commission of Dennis (commission) in order to construct a pier and dock off the waterfront edge of their property. The principal defendant is Alan S. Marcy, the shellfish constable for the town of Dennis (town).[4] At issue before us is the viability of the plaintiffs' claim that in connection with their first permit application Marcy threatened or coerced the plaintiffs in order to prevent them from exercising their right to seek the permit and to use and improve their property. A judge in the Superior Court allowed Marcy's motion for summary judgment on this claim, and the Appeals Court affirmed, although on different grounds. *Kennie v. Natural Resource Dep't of Dennis*, 69 Mass. App. Ct. 158 (2007) (*Kennie*). We granted the plaintiffs' application for further appellate review. We conclude that the summary judgment record presents genuine issues of material fact concerning whether Marcy's words and conduct did interfere with the plaintiffs' statutory or constitutional rights "by threats, intimidation or coercion," in violation of the Act. We therefore vacate the judgment of the Superior Court and remand for further proceedings.

1. We summarize the facts in the light most favorable to the plaintiffs, as the nonmoving parties on the summary judgment motion.[5] See *DiLiddo* v. *Oxford St. Realty, Inc.*, 450 Mass. 66,

---

[3] The property is owned by a trust, for which Hagen is a trustee and Kennie is trustee and beneficiary. Kennie also holds a remainder interest.

[4] The other defendant is the natural resource department of the town of Dennis (department). The plaintiffs do not raise any claim under G. L. c. 12, § 11I, against the department. At the present time, the only claim against the department is one the plaintiffs seek to bring under 42 U.S.C. § 1983 (2000). A judge in the Superior Court denied the plaintiffs' motion to amend their complaint in order to add the § 1983 claim, and the plaintiffs have appealed from this ruling. For reasons we discuss *infra*, we affirm the denial of the plaintiffs' motion to amend their complaint.

[5] On October 31, 2005, the day before the scheduled hearing in the Superior

70 (2007). The plaintiffs own a 2.7 acre piece of property on the Bass River in West Dennis. They sought to build a structure consisting of a stairway, a fixed pier with a ramp, and a floating dock (collectively, dock), extending from their property into the Bass River (location 3).[6] At some point in 2001, the plaintiffs submitted an application to the commission requesting a permit that would allow them to proceed with the project. General Laws c. 131, § 40, provides that on receiving an application for a permit, a commission "shall hold a public hearing on the proposed activity within twenty-one days of the receipt of said notice." The commission's rules require that any person applying for a permit for a dock must provide the shellfish constable with data detailing the size and frequency distributions for shellfish on the proposed site. The shellfish constable is not a member of the commission, but under the town's bylaw he is directed to receive the shellfish information and provide comments to the commission.

In July, 2001, to accompany their application as required by the commission's rules, the plaintiffs submitted a report by Jacob Bruinooge, a shellfish expert they had hired, as well as reports from a biologist, a senior scientist at a marine ecology laboratory, and an engineer. Bruinooge's report was based on a shellfish survey he conducted, also in July, 2001, that revealed a shellfish density of no more than .0043 per square foot. In July, 2001, and again in October, before any additional surveys were conducted, Marcy, in his capacity as shellfish constable, submitted reports to the commission recommending that it deny the plaintiffs' application because of significant shellfish beds at the proposed dock site.

The plaintiffs focus on three statements Marcy made to Steven Kennie. During a November 15, 2001, conversation, after the plaintiffs' permit application had been filed with the commission,

Court on the defendants' motions for summary judgment, the plaintiffs filed a motion to supplement the record. The motion was never acted on. Although the plaintiffs include references to some of those supplemental facts in their brief, we have not considered them.

[6]Location 3 was one of at least five sites on which the plaintiffs had proposed to build. On the advice of the department, the plaintiffs abandoned two previous sites (locations 1 and 2) because of their proximity to shellfish beds that were stocked by the town. The conservation commission of Dennis (commission) eventually approved construction of a dock at location 5. See infra.

Marcy told Kennie that he was "mandated to do whatever it takes to prevent docks" from being built in the area. In a November 27 conversation between the two, Marcy said that he was surprised by the "quantity of shellfish that [Bruinooge] found" because he thought Bruinooge would have found even fewer shellfish around location 3, and that had he known Kennie was going to conduct a survey Marcy "could have done something about it." Finally, on January 10, 2002, Marcy told Kennie that the town was going to conduct its own survey of the site. When Kennie questioned the usefulness of additional surveys in light of Bruinooge's findings that there were few shellfish in the area, Marcy said that he "could take care of that."

Marcy then arranged for the division of marine fisheries (division) to conduct its own survey of the site, although he refused to notify the plaintiffs when the new survey would be conducted. It was conducted on January 14, 2002, by Terry O'Neil, an employee of the division, with Marcy present. The division's survey revealed shellfish densities of 0.5 per square foot, a density more than one hundred times greater than those found in the Bruinooge survey.[7] The plaintiffs claim that before the division's survey was conducted, Marcy purchased shellfish from a local vendor and planted them in the water, thus artificially inflating the survey results.[8]

The plaintiffs were told by members of the commission that, in light of the findings in the division's survey, the commission

---

[7] In Marcy's February 4, 2002, report to the commission, he classified location 3 as having the highest rate of shellfish production, a classification reserved for those areas with a shellfish density of one per square foot, although that rate was not supported by the division's survey.

[8] The plaintiffs' claim concerning Marcy's planting of shellfish relies on the evidence introduced into the summary judgment record by the plaintiffs: the otherwise unexplained increase in the density of shellfish; the depth of the quahogs found in the division's survey; and the sighting of Marcy in a boat near the survey cite at the plaintiffs' property "putting something into the water" and "splashing" around on January 11, 2002. The evidence cited by the plaintiffs is sufficient to allow a reasonable jury to conclude that Marcy deliberately planted shellfish on the survey cite; while Marcy denies that he planted any shellfish, he does not contest the adequacy of the plaintiffs' proffered evidence for summary judgment purposes. Because we consider the evidence in the light most favorable to the plaintiffs, we take the plaintiffs' factual allegations as true. The Appeals Court followed the same course. *Kennie* v. *Natural Resource Dep't of Dennis*, 69 Mass. App. Ct. 158, 166 n.12 (2007) (*Kennie*).

"had all the information [it] needed to offer a denial." Understanding their request to be futile, the plaintiffs withdrew their application for location 3.[9]

The plaintiffs filed their initial complaint in this case on May 16, 2002. It included claims based on the Act, G. L. c. 93A, §§ 2 and 11, and 42 U.S.C. § 1983 (2000). The defendants removed the case to the United States District Court, where a judge granted the plaintiffs' motion to amend the complaint to delete the Federal claims and remanded the case to the Superior Court. The amended complaint included three counts: two claimed violations of G. L. c. 12, § 11I, one based on the plaintiffs' due process rights and one based on the plaintiffs' equal protection rights; and one claimed violation of G. L. c. 93A, §§ 2 and 11. The defendants' motion to dismiss the claims based on G. L. c. 93A was allowed, and the plaintiffs' motion to amend their complaint for a second time was denied.[10] On December 29, 2005, a different judge in the Superior Court (motion judge) granted the defendants' motion for summary judgment on the two remaining claims, both based on G. L. c. 12, § 11I, concluding that Marcy's actions did not interfere with any secured constitutional rights of the plaintiffs.

The plaintiffs appealed from the grant of summary judgment and from the denial of their motion to amend; they did not appeal from the dismissal of their claims under G. L. c. 93A. In affirm-

---

[9]Although not directly relevant to this case, we summarize the subsequent history of the plaintiffs' efforts to obtain a permit for their dock. Following their withdrawal of the permit application for location 3, the plaintiffs submitted an application for an alternate site (location 4), which was later denied by the commission, in a decision that relied on the same division survey results described in the text, *supra.* The plaintiffs appealed from the denial to the Superior Court. A judge in the Superior Court denied the plaintiffs' motion for judgment on the pleadings and affirmed the commission's decision with respect to location 4. The plaintiffs did not pursue an appeal from that decision. In February, 2005, the commission eventually allowed construction of a dock, with conditions, at yet another location on the plaintiffs' property (location 5).

[10]The plaintiffs' motion sought a voluntary dismissal that would allow them to refile the case in Federal court with the previously deleted Federal claims or, in the alternative, "leave to amend to re-plead the federal civil rights claim that appeared in the original complaint." This motion was filed after a change in plaintiffs' counsel. The defendants opposed the motion. The Superior Court judge hearing the motion gave as her reason for denying it that "[c]hange in plaintiff's counsel should not create rights prior counsel waived." On appeal, the plaintiffs pursue leave to amend, but no longer seek voluntary dismissal.

ing the grant of summary judgment, the Appeals Court concluded that any reasonable juror would have understood Marcy's words to imply only that he would take all lawful measures to prevent the project, and therefore his actions could not be interpreted as "threats, intimidation or coercion" within the meaning of the Act, and the plaintiffs had no viable claim under the Act.[11] *Kennie,* 69 Mass. App. Ct. at 162-166.

2. The issue before us is whether the motion judge properly granted summary judgment on the plaintiffs' claim of civil rights violations under the Act. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991).

"To establish a claim under the [A]ct, the plaintiffs 'must prove that (1) [their] exercise of enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by "threats, intimidation or coercion." ' " *Buster* v. *George W. Moore, Inc.,* 438 Mass. 635, 644 (2003), quoting *Freeman* v. *Planning Bd. of W. Boylston,* 419 Mass. 548, 564, cert. denied, 516 U.S. 931 (1995). On appeal, the plaintiffs pursue claimed violations of their due process rights secured by the Massachusetts Declaration of Rights.[12] Marcy argues that, as the motion judge determined, he did not interfere with the plaintiffs'

---

[11]In light of this conclusion the Appeals Court did not reach the issue on which the Superior Court judge had based his decision, namely, "whether the plaintiffs were exercising a constitutionally protected right." *Kennie,* 69 Mass. App. Ct. at 166 n.12.

[12]Principles of due process of law are embodied in arts. 1, 10, and 12 of the Massachusetts Declaration of Rights, and in Part II, c. 1, of the Massachusetts Constitution. *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629, 633 n.4 (1981).

In their brief to this court, the plaintiffs address their arguments based on violations of G. L. c. 131, § 40, separately from the claimed constitutional violations. The complaint does not claim violations of G. L. c. 131, § 40, as a basis for the plaintiffs' claims under the Act, and it does not appear they raised the argument in the Superior Court. It therefore may be waived, although Marcy does not argue waiver before us. In any event, the plaintiffs' argument regarding the propriety of the hearing provided by G. L. c. 131, § 40, is

exercise of any protected constitutional or statutory rights; and that, as the Appeals Court held, the evidence of threats, intimidation, or coercion was insufficient to survive summary judgment.[13] See *Kennie*, 69 Mass. App. Ct. at 161-166. We discuss these two points in turn.

a. The plaintiffs' right to use and enjoy their property is constitutionally secured by arts. 1, 10, and 12 of the Declaration of Rights and the Fourteenth Amendment to the United States Constitution. See *Haufler* v. *Zotos*, 446 Mass. 489, 504 (2006). This extends to "the right to own land and to use and improve it according to the owner's conceptions of pleasure." *Brett* v. *Building Comm'r of Brookline*, 250 Mass. 73, 77 (1924). There is no doubt that the plaintiffs had the right to seek a permit under G. L. c. 131, § 40, as a necessary step in their effort to build a dock on and extending from their property; the right to seek the permit comes within the scope of the right to use and improve their property. See *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. 771, 780-781 (1987) (*Pheasant Ridge*); *Ayasli* v. *Armstrong*, 56 Mass. App. Ct. 740, 752 (2002); *id.* at 759 (Rapoza, J., dissenting).

Considered in the light most favorable to the plaintiffs, the evidence indicates that Marcy interfered or attempted to interfere with the plaintiffs' protected property rights. In particular, he stated that he would "do" something about and "take care of" the plaintiffs' shellfish survey results, and then did so by planting shellfish and thereby inflating the division's subsequent shellfish survey. By planting the shellfish, Marcy set the stage for a fraudulent shellfish survey to be conducted by the division, a survey that he, in his official capacity as advisor to the commission, intended to submit to that body for its consideration in connection with the plaintiffs' application. The plaintiffs reasonably

closely related to their claimed due process right to seek to improve their property. Thus, we consider the fair application of the procedures provided in G. L. c. 131, § 40, in connection with the plaintiffs' due process claims.

The plaintiffs do not pursue their equal protection claim on appeal.

[13]The defendants also argue that the plaintiffs are barred from litigating the legitimacy of the division's survey by principles of collateral estoppel after the commission's decision denying the permit for location 4 and the Superior Court decision affirming that result. This argument has been waived because the defendants failed to raise the issue below. See *Horner* v. *Boston Edison Co.*, 45 Mass. App. Ct. 139, 141 n.2 (1998).

believed that commission would deny their application on the basis of the division's survey. Accordingly, Marcy's actions led them to abandon their application. Without a permit the plaintiffs could not pursue their desired property use and improvement.[14]

Marcy argues that (1) the plaintiffs have no constitutionally protected property interest in a permit because they cannot claim an entitlement to its being granted; and (2) without a property interest, the plaintiffs cannot challenge the constitutionality of the application process. The defendants rely on *Roslindale Motor Sales, Inc.* v. *Police Comm'r of Boston*, 405 Mass. 79, 82 (1989) (*Roslindale*), a case in which we held that "[t]o have a property interest in a license, an applicant must 'have a legitimate claim of entitlement to it.' " *Id.*, quoting *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577 (1972). Marcy's reliance on *Roslindale* is misplaced. The only property interest presented in *Roslindale* was the interest in the license itself. Marcy also relies on *K. Hovnanian at Taunton, Inc.* v. *Taunton*, 37 Mass. App. Ct. 639, 646 & n.11 (1994) (*K. Hovnanian*), and *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. 621, 626-627 (1989) (*Rosenfeld*). These cases, like *Roslindale*, involved in the first instance only claims of property deprivation based on the denial of permits by

---

[14]Such official, governmental action could be characterized as a denial of procedural due process, because the use of tainted evidence might be seen to interfere with the plaintiffs' right to have their application heard "in a meaningful manner." *Matter of Kenney*, 399 Mass. 431, 435 (1987) ("The fundamental requisite of [procedural] due process is an opportunity to be heard at a meaningful time and in a meaningful manner"). See *Amsden* v. *Moran*, 904 F.2d 748, 753 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991), quoting *Zinermon* v. *Burch*, 494 U.S. 113, 125 (1990) (" 'procedural due process' is simply 'a guarantee of fair procedure' "). At the same time, one might characterize a governmental agency's basing its decision on tainted evidence — especially evidence intentionally tainted by a public officer — as striking at the core of the official action, and therefore such an abuse of governmental power as to constitute a denial of substantive due process. See *Amsden* v. *Moran, supra* ("a substantive due process claim implicates the essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible"). As discussed *infra*, the plaintiffs do not need to have an entitlement to a permit from the commission to assert either type of claim.

For present purposes, it is not necessary to determine precisely which type of due process claim is at issue, particularly because the plaintiffs have not attempted to do so.

local officials — a sewage disposal permit in *Rosenfeld* and per-
mission to tie into an intermunicipal sewer system in *K. Hovna-
nian* — and not the interference with a permit application at issue
here. Because the plaintiffs in these two cases had no entitlement
to the permits or permission they sought, their respective asser-
tions of a property interest failed.[15]

The plaintiffs' claim in this case is not based solely on their
interest in the permit, but on their interest in the land on which
they had a constitutionally protected right to make improvements.
This right is, of course, subject to some government regulation,
but the plaintiffs do not contest the constitutionality of the regu-
latory wetlands protection scheme administered by the commis-
sion or indeed any actions by the commission (which is not a
defendant). The plaintiffs' focus, rather, is solely on the actions
of Marcy. As we have previously discussed, (1) the plaintiffs
had a protected right to seek a permit from the commission,
whether or not they had an entitlement to the order they sought;
and (2) if, as the plaintiffs assert, Marcy's words and subsequent
actions were an attempt to cause the commission to act on tainted
evidence, he himself would have interfered with, or attempted to
interfere with, the plaintiffs' right to use and improve their prop-
erty subject to governmental regulations that are fairly admini-
stered. See *Pheasant Ridge*, 399 Mass. at 780-781. See also *Tor-
tora* v. *Inspector of Bldgs. of Tewksbury*, 41 Mass. App. Ct. 120,

---

[15]Although Marcy does not raise this point, in each of these cases, the court
went on to opine that even if the plaintiff had asserted a protected property
interest, the plaintiff would not have a viable civil rights claim; in each case,
the court relied primarily on a line of Federal cases, many from the United
States Court of Appeals for the First Circuit, concluding that in the area of
land use, even a bad faith or arbitrary application of State law by a municipal
board does not amount to a deprivation of property protected by the Fourteenth
Amendment to the United States Constitution. See *K. Hovnanian at Taunton,
Inc.* v. *Taunton*, 37 Mass. App. Ct. 639, 647 (1994); *Rosenfeld* v. *Board of
Health of Chilmark*, 27 Mass. App. Ct. 621, 627-628 (1989). Considering only
the summary judgment record before us, we consider this case to present a
very different situation. Here, Marcy, a municipal official, is claimed to have
engaged in conduct that corrupted the integrity of the commission's work. The
alleged conduct, if proved, arguably would rise to a level of egregiousness
"that so shocks the conscience as to give rise to a due process claim." *K.
Hovnanian at Taunton, Inc.* v. *Taunton*, *supra*. See *Creative Env'ts, Inc.* v. *Es-
tabrook*, 680 F.2d 822, 832 n.9 (1st Cir.), cert. denied, 459 U.S. 989 (1982)
(due process claim may arise from local land use decisions involving "gross
abuse of power, invidious discrimination, or fundamentally unfair procedures").

123 (1996) (defendant building inspectors' threats to arrest plaintiff homeowners for, among other things, applying for permit, violated Act because defendants "sought to cause the plaintiffs to cease attempts to pursue lawful avenues to use and enlarge their property").[16]

The summary judgment record supports the plaintiffs' claim that Marcy has interfered with or attempted to interfere with their exercise or enjoyment of their constitutional rights to due process.

b. An interference with a secured right is only a violation of the Act if it is accomplished through threats, intimidation, or coercion. This limitation prevents the act from creating a vast, constitutional tort. See *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. at 565-566, quoting *Bally* v. *Northeastern Univ.*, 403 Mass. 717, 718 (1989). A "threat" is "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, 474, cert. denied, 513 U.S. 868 (1994) (*Planned Parenthood*). "Intimidation" involves putting one "in fear for the purpose of compelling or deterring conduct." *Id.* "Coercion" is the application to another of force "to constrain him to do against his will something he would not otherwise have done." *Id.*, quoting *Deas* v. *Dempsey*, 403 Mass. 468, 471 (1988). Both threats and intimidation often rely on an element of actual or threatened physical force, *Ayasli* v. *Armstrong*, 56 Mass. App. Ct. at 752, an element that is missing in this case. However, we have held that coercion is a broader category that may rely on physical, moral, or economic coercion. See *Haufler* v. *Zotos*, 446 Mass. at 505; *Buster* v. *George W. Moore, Inc.*, 438 Mass. at 646-648; *Planned Parenthood, supra*. Again considering the summary judgment record in the plaintiffs' favor, we conclude that Marcy's behavior could reasonably be found to fall into this third category. His potentially coercive behavior includes both verbal statements, such as the statement that he would "take care of" the plaintiffs' favorable shellfish survey, and actions taken to effectuate those statements, as when he used his official position to arrange a subsequent survey and artificially inflated the results of that survey.

---

[16]Because this is the case, we do not reach the plaintiffs' separate argument that under the terms of G. L. c. 131, § 40, they have an entitlement to a permit.

Some of Marcy's words were very similar to the words spoken by two selectmen in *Pheasant Ridge*, 399 Mass. at 781. In that case, a developer sought a comprehensive permit to build an apartment complex. *Id.* at 773. Two town selectmen told the developer that they would take any action necessary to stop the development, and the town voted to take the developer's property by eminent domain. *Id.* at 772-773. This court held that the developer's civil rights claim could not be resolved on a motion for summary judgment because it was for a trier of fact to determine whether the selectmen's words could "reasonably be understood only to express an intention to use lawful means to block the development," or whether they represented actionable coercion. *Id.* at 782.

In *Pheasant Ridge* we did not expressly consider which factors a fact finder might consider in evaluating whether a statement was coercive, but it is clear that the coercive power of the selectmen's words was magnified by the selectmen's official status that a developer might reasonably understand could be used by them to intervene in the permitting process in an untoward way. In both *Pheasant Ridge* and this case, officials acted in accordance with their coercive statements. Evidence of the selectmen's ability to interfere with the developer's rights in *Pheasant Ridge* was amply demonstrated by the town's invalid taking of the developer's land. Similarly, Marcy's statements that he would "do whatever it takes to prevent docks," and that he would "take care of" the favorable results of the Bruinooge survey, held more coercive power because they were spoken by the town shellfish constable.[17]

The defendants argue that when evaluating the plaintiffs' claims under the Act, a court may consider only Marcy's words and not his subsequent actions. According to the defendants, any action

_____

[17]Marcy's statements distinguish this case from *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. 548, cert. denied, 516 U.S. 931 (1995), in which the defendant town planning board's unlawful delays and conditional approval of a developer's project did not amount to a violation of the Act, because although the board's actions were legally erroneous and included intentional delays, there was "no evidence of personal animus" against the plaintiff, of any threatening statements by board members, or of any motive on the board's part other than the safety of the proposed development, *id.* at 563, and "no evidence that the board attempted to exercise coercion against the plaintiff to force him to forgo development of his property." *Id.* at 566.

Marcy took to inflate the results of the division's survey was a direct deprivation of rights, and therefore not actionable under the Act. See *Swanset Dev. Corp.* v. *Taunton,* 423 Mass. 390, 396 (1996), quoting *Freeman* v. *Planning Bd. of W. Boylston,* 419 Mass. at 565 ("a direct deprivation of rights, even if unlawful, is not coercive because it is not an attempt to force someone to do something the person is not lawfully required to do"). Contrary to the argument of the defendants, Marcy's attempt to skew the division's survey results, which followed his three separate statements to Kennie, could reasonably be interpreted as giving coercive meaning and power to his earlier words — to demonstrate quite vividly that Marcy meant what he said. The planting of shellfish, by itself, deprived the plaintiffs of no rights. Rather, a fact finder could conclude that Marcy's words, considered in the context of the action that he took to inflate the shellfish survey, were sufficiently coercive to force the plaintiffs to do something against their will that they would not have done otherwise, namely, to give up their application for a permit pertaining to location 3, their preferred location. Cf. *Pheasant Ridge,* 399 Mass. at 781 (direct deprivation found in taking plaintiff's land by eminent domain); *Swanset Dev. Corp.* v. *Taunton, supra* (board's deliberate delays in permitting represented direct deprivation and not coercion).

It is important to emphasize the quite distinct limits of this case. A certain amount of verbal "posturing" and "[h]uffing and puffing" is "not uncommon during neighborhood disputes, especially those wending their way through town hall en route to further litigation." *Ayasli* v. *Armstrong,* 56 Mass. App. Ct. at 761 (Rapoza, J., dissenting). Not every intemperate exclamation rises to the level of "threats, intimidation or coercion." *Id.* at 762. Central to the plaintiffs' claim is Marcy's official status, coupled with his actions in furtherance of his statements.

The defendants' motion for summary judgment on the civil rights claim should have been denied.

3. The plaintiffs argue that the judge erred in denying their motion to amend their complaint. They seek to reinstate claims that they had previously removed shortly before the case was remanded from the United States District Court to the Superior Court. "Although leave to amend a complaint shall be 'freely

given when justice so requires,' Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974), the decision to grant such a motion lies within the broad discretion of the trial judge." *Harvard Law School Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 72 (1992). Good reasons for denying such a motion include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 290 (1977), quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962). In these circumstances, after the plaintiffs had included and then removed the claims at issue once already, the Superior Court judge considering the motion to amend did not abuse her discretion in denying the motion seeking to include them for a second time.

4. The plaintiffs' brief also includes a claimed violation of their right to petition, a theory that was also absent from the complaint, but was addressed by the motion judge. The plaintiffs have cited to no cases applying such constitutional protection in circumstances similar to this case. The claimed violations at issue in this case are more appropriately addressed by constitutional due process protections.

5. The judgment is vacated and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*