Williams, PJ.
Upon returning from their vacation at the Bellagio, a hotel and casino in Las Vegas, Nevada, the plaintiffs, Nancy and Dominic S. Palano (“Palanos”), brought suit against Bellagio Corporation (“Bellagio”), claiming that their stay had degenerated into a “nightmare” after Bellagio mishandled the Palanos’ grievance when they discovered apparently illicit drugs in their room. The Palanos’ complaint sounded in four counts: negligent infliction of emotional distress, breach of contract, violation of G.L.c. 93A, and breach of the covenant of quiet enjoyment.[3] Bellagio counterclaimed for abuse of process, and later moved *126 for summary judgment, which it obtained on all counts. Following the Palanos’ initial appeal here from that allowance, which we ruled was premature because the counterclaim remained unresolved, Bellagio moved for separate and final judgment and voluntarily dismissed its counterclaim. The Palanos now appeal the allowance of Bellagio’s motion for summary judgment. We conclude that summary judgment on the Palanos’ claims was error, and return the case to the Attleboro District Court for trial on those issues.
We briefly review the facts in the light most favorable to the Palanos. See, e.g., Kennie v. Natural Resource Dep’t of Dennis, 451 Mass. 754, 759 (2008). In February, 2006, the Palanos checked into a room at the Bellagio, where they had stayed on several prior occasions. Nancy[4] had recently undergone surgery. Two days into their stay, Dominic discovered what appeared to be illicit drugs — a white powdery substance in a plastic sandwich bag — and some money on the armoire in their room. He notified hotel staff, who found a dollar bill rolled with a white substance along with a plastic bag containing two pills and another rolled dollar. The Palanos expressed concern that the substance might have fallen onto and contaminated their luggage, and that the owners of the apparent contraband might return to the room in search of it. That latter fear was fueled by Bellagio’s employees, who reportedly observed that because the lock was broken, it appeared that someone had tried to enter the room without a key. The Palanos wanted a new room, or at least the thorough cleaning of their room and luggage and the repair of the door lock. The following day, they complained to a manager and were offered a one-night’s complementary stay. The Palanos, apparently initially mollified, later argued that their entire stay should be complementary. Although Bellagio did not honor that request, the Palanos stayed four more nights. Once back home in Norton, Nancy wrote to Bellagio, acknowledging that although “[fjine, I know a lot goes on, it’s Vegas,” she and Dominic had been rudely treated throughout their week at the Bellagio and that the proffered one-night’s-stay credit was insulting. She requested no specific action or relief, and Bellagio made no response. Nancy’s second letter, in April, 2006, threatened further action unless Bellagio explained the behavior of its staff within ten days. Bellagio replied with an offer of a complementary stay, which drew a G.L.c. 93A demand letter from the Palanos’ counsel that requested a rebate of the hotel room charge ($1,726.46), damages for emotional distress ($5,000.00), attorney’s fees of $500.00, and costs of $100.00, for a total of $7,326.46. That demand was unmet, and the Palanos filed this action against Bellagio, which, as noted, successfully moved for summary judgment.
1. Even if it is assumed that Massachusetts may properly exercise personal jurisdiction over Bellagio, the inquiry as to whether Massachusetts or Nevada law controls any aspect of this action was neither addressed on this appeal, nor in the trial court. SeeNierman v. Hyatt Corp., 441 Mass. 693, 696 n.7 (2004) (exercise of personal jurisdiction over foreign defendant does not alone suffice to create substantial *127 interest required to apply law of forum state).[5] On the contrary, both parties have relied solely on Massachusetts authorities throughout the progress of this action. We consider the application of Massachusetts law, therefore, to be the “law of the case.” See Karty v. Mid-America Energy, Inc., 74 Mass. App. Ct. 25, 28 n.6 (2009), citing TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass. 422, 431 (2006).
2. Appellate review of the allowance of a motion for summary judgment is de novo. McGrath v. ACT, Inc., 2008 Mass. App. Div. 257, citing Howell v. Enterprise Publ. Co., LLC, 72 Mass. App. Ct. 739, 741 (2008).[6] We must determine “whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.” Kennie, supra at 759, quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). As discussed below, on each of the Palanos’ theories, we find that Bellagio was not, under Massachusetts law, entitled to summary judgment as a matter of law.
*128 3. Negligent Infliction of Emotional Distress. Recovery for negligent infliction of emotional distress was unavailable in Massachusetts until the Supreme Judicial Court held in 1978 that a plaintiff could prevail under such a theory if she could establish both a “substantial physical injury” and causation. Dziokonski v. Babineau, 375 Mass. 555, 568 (1978) .[7] By the time of Payton v. Abbott Labs., 386 Mass. 540 (1982), though, the “substantial physical injury” requirement had been refined: a plaintiff must demonstrate some “physical harm manifested by objective symptomatology.” Id. at 557. And since Sullivan v. Boston Gas Co., 414 Mass. 129 (1993),[8] plaintiffs have had to advance only “enough objective evidence of harm to convince a judge that their claims presented] a sufficient likelihood of genuineness to go to trial.” Id. at 137-138. The plaintiff, however, “must do more than allege ‘mere upset, dismay, humiliation, grief and anger,’” id. at 137, quoting Corso v. Merrill, 119 N.H. 647, 653 (1979), or even frequent crying. Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 412-413 (2002). In Migliori v. Airborne Freight Corp., 426 Mass. 629, 631-632 (1998), the Supreme Judicial Court required “some” objective corroboration as an alternative to physical harm; and in Bresnahan v. McAuliffe, 47 Mass. App. Ct. 278 (1999), the Appeals Court concluded that a showing of stomach pain, nausea, body shakes, and reduced libido was sufficient to defeat a summary judgment motion. Id. at 285. Allegations of a “minimal loss of sleep and appetite” cannot properly support a claim for negligent infliction of emotional distress, Vasquez v. Potter & Co., 2007 Mass. App. Div. 26, 30, but “continuing headaches and nausea” can. Pizzochero v. Vergados, 2007 Mass. App. Div. 141, 142. Indeed, “[a] showing of symptoms commonly classified as mental or emotional in nature (insomnia, impaired concentration, uncontrollable crying, gastrointestinal distress, headaches, feelings of despair, anxiety, depression) may provide the type of objective evidence necessary to establish physical harm.” Pratt v. Martineau, 69 Mass. App. Ct. 670, 679 (2007), citing Sullivan, supra at 131-135, and Kelly v. Brigham & Women’s Hosp., 51 Mass. App. Ct. 297, 305-306 (2001).[9]
*129 We conclude that the Palanos asserted enough in the way of objective evidence of Nancy’s emotional distress to defeat Bellagio’s summary judgment motion on this count. A party opposing such a motion need gain only a “toehold” in the evidence. Farineau v. Easley, 2007 Mass. App. Div. 128, 131, citing, inter alia, Shimer v. Foley, Hoag & Eliot LLP, 59 Mass. App. Ct. 302, 314 (2003). A court deciding a summary judgment motion must resolve all evidentiary inferences in favor of the party opposing the motion. J.F. v. J.F., 72 Mass. App. Ct. 782, 789-790 (2008), citing Nunez v. Carrabba’s Italian Grill, Inc., 448 Mass. 170, 174 (2007). And the court neither resolves issues of fact, nor assesses the weight or the credibility of the evidence. Id. at 790, citing Kernan v. Morse, 69 Mass. App. Ct. 378, 382 (2007).
In interrogatory answers, Nancy stated only that she and Dominic were “extremely upset”[10] and “affected by the stress placed on [them], especially upon [her] in [her] weakened condition.” She identified a clinical social worker as having provided treatment, but denied both incapacity from work and any claim for medical expenses. At her deposition, Nancy testified that she had begun visiting the clinical counselor for help in confronting complications from her surgery, and only later raised the issue of the Bellagio incident, but that “wasn’t the main thing.” Indeed, the only reference to Bellagio in the counselor’s notes concerns Nancy’s being “tense” as a result of the litigation, with no mention of the hotel incident. Nancy’s discovery responses do not establish a sufficient showing of objective corroboration of her emotional distress claim.
In her affidavit of January 21,2008, filed in opposition to Bellagio’s summary judgment motion, however, Nancy finally described her emotional complaints beyond the barest generalities; she stated that she was “feeling upset, frustrated, helpless and depressed. ... [She] continued to suffer stress headaches, sleeplessness and crying fits.” Although a party, with the sole hope of defeating summary judgment by creating a triable issue, may not launch at the eleventh hour an affidavit that contradicts her previous statements and discovery responses, an affidavit that merely elaborates on previously sworn statements is not prohibited. Forster v. Town of Belmont, 2008 Mass. App. Div. 275, 276, citing Locator Servs. Group, Ltd. v. Treasurer & Receiver Gen., 443 Mass. 837, 864 (2005). See also Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 647-648 (2002); Lyons v. Nutt, 436 Mass. 244, 249 (2002). Although it is a close question, the reference in Nancy’s affidavit to specific symptoms supplies the toehold sufficient to salvage her emotional distress claim at the summary judgment stage. Despite the haziness of her discovery responses, including her deposition testimony, we cannot say that her affidavit contradicts anything she said earlier. It must fairly be characterized as elaborating on those earlier vague characterizations of her emotional state. The specific facts asserted in that affidavit suffice to create a genuine issue of material fact, and, thus, defeat Bellagio’s bid for summary judgment on that count.
4. Breach of Contract. The Palanos allege a breach of contract, essentially asserting that Bellagio failed to provide them the hotel room to which they were entitled. *130 The relationship between innkeeper and guest is a contractual relationship, see, e.g., McClean v. University Club, 327 Mass. 68, 71 (1951),[11] and if a breach is found, the prevailing party is entitled to damages.
“The contract was not merely for the use of the room and entertainment, but for immunity from rudeness, personal abuse and unjustifiable interference ... by the defendant or his servants. ...” Frewen v. Page, 238 Mass. 499, 503 (1921). Thus, besides potential damages of the difference between the value of the hotel room the Palanos contracted for and the one they received, the Palanos could also be eligible for an award of emotional distress for a proven breach.[12] Recovery of damages for emotional distress resulting from a breach of contract is generally not permitted. See, e.g., John Hancock Mut. Life Ins. Co. v. Banerji, 447 Mass. 875, 888 (2006). Such damages might be recoverable, though, when there exists a special relationship between the contracting parties, such as the relationship in this case of innkeeper and guest. See McClean, supra; Frewen, supra at 504.[13]
Bellagio was not entitled to summary judgment as a matter of law on this claim.
5. Violation of G.L.c. 93A. In reliance on Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 800 (2006), Bellagio argues, incorrectly, that the judge properly entered summary judgment in its favor on the Palanos’ G.L.c. 93A claim because they suffered no damages as a result of the alleged hotel incident. As this Appellate Division noted only last year, “G.L.c. 93A permits recovery when unfair conduct ‘cause [s] a personal injury loss such as emotional distress, even if the con *131 sumer lost not “money” or “property.”’” Lepp v. M.S. Realty Trust, 2008 Mass. App. Div. 44, 50, quoting Hershenow, supra at 798, and citing Haddad v. Gonzalez, 410 Mass. 855, 865-866 (1991) (following 1979 amendment of G.L.c. 93A, §9, severe emotional distress was loss cognizable under statute). See also Kwaak v. Pfizer, Inc., 71 Mass. App. Ct. 293, 299 (2008), quoting Leardi v. Brown, 394 Mass. 151, 159 (1985) (injury is “invasion of any legally protected interest of another”).
As to the alleged conduct of Bellagio’s agents, the existence of unfair acts must ordinarily be determined from the circumstances of each claim. Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 238 (2008). And while a ruling that given conduct violates c. 93A is a legal determination, “the issue of whether conduct in the context of the circumstances of a particular case is unfair or deceptive is a question of fact for the [fact finder] .’’Lepp, supra, quoting Lily Transp. Corp. v. Royal Institutional Servs., Inc., 64 Mass. App. Ct. 179, 209 n.16 (2005), and citing R.W. Granger & Sons, Inc. v. J&S Insulation, Inc., 435 Mass. 66, 73 (2001). Viewing Bellagio’s conduct in the light most favorable to the Palanos, Kennie, supra at 759, we cannot say that a fact finder could not reasonably conclude that said conduct was unfair or that the Palanos could not prove they had sustained an injury. Just as they secured a toehold for their contract and tort claims, the Palanos have done so with their c. 93A claim.
Accordingly, the summary judgment entered for the defendant is vacated, the allowance of the defendant’s summary judgment motion is reversed, and this action is returned to the Attleboro Division for a trial on the merits of all counts of the plaintiffs’ complaint.
So ordered.

 Counsel for the Palanos waived the claim for breach of the covenant of quiet enjoyment at oral argument. The covenant of quiet enjoyment, created in G.L.c. 186, §14, applies to landlord-tenant relationships, and the section specifically exempts from its scope “rooms in a hotel.”

 The Palanos will be referred to by their given names as appropriate.

 “It is a fundamental choice of law principle that only actual conflicts between the laws of different jurisdictions must be resolved.” Kaufman v. Richmond, 442 Mass. 1010, 1012 (2004), citing Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 332 n.7 (1983). There appears here to exist such a conflict. The application of Nevada law in this case would likely have eviscerated the Palanos’ emotional-distress-based claims. Nevada law imposes greater restrictions than does Massachusetts law on claims of negligent infliction of emotional distress. To succeed on such a claim in Nevada, a plaintiff must demonstrate “serious emotional distress causing physical injury or illness.” Turner v. Mandalay Sports Entertainment, LLC, 180 P.3d 1172, 1178 n.1 (Nev. 2008) (Gibbons, C.J., concurring in part and dissenting in part), citing Barmettler v. Reno Air, Inc., 956 P.2d 1382,1387 (Nev. 1998). In Barmettler, the Nevada Supreme Court explicitly held that “in cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of ‘serious physical distress’ causing physical injury or illness must be presented.” Id. at 1387. Barmettler allegedly had contemplated suicide and sought psychotherapy as a result of the behavior of his coworkers upon his return to work after a stint in a residential alcohol-treatment facility. That “additional minimal therapy... did not satisfy the physical injury ‘or impact requirement of [the seminal case] of Chowdhry [v. NLVH, Inc., 851 P.2d 459 (Nev. 1993)].” Id. The Barmettler court noted that Chowdhry’s emotional distress claims were premised on assertions that “‘he was very upset and could not sleep. Insomnia and general physical or emotional discomfort are insufficient to satisfy the physical impact requirement.” Id. And had Nevada law dispatched the Palanos’ emotional distress claim, they would also have been barred from seeking any “emotional impact damages” on their breach of contract claim. See Countrywide Home Loans, Inc. v. Thitchener, 192 P.3d 243, 249 (Nev. 2008).
Bellagio has failed, to date, to raise any issue as to the applicability of the Massachusetts Consumer Protection Statute, G.L.c. 93A, §9, to business acts or practices occurring outside of this Commonwealth.

 “[W]e owe no deference to the [motion] judge’s decision because it is a ruling of law and involves no credibility or evidentiary determinations.” Boone v. Commerce Ins. Co., 451 Mass. 192, 195 (2008).

 The tort of intentional infliction of emotional distress is distinct from the negligent infliction variety. Physical harm is not an element of the tort of intentional infliction, the keystone of which is “extreme and outrageous” conduct resulting in “severe” emotional distress. See, e.g., Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 236 (2008), quoting Agis v. Howard Johmon Co., 371 Mass. 140, 144-145 (1976).

 The Supreme Judicial Court has characterized Sullivan both as having “abandoned the so-called physical harm rule,” Migliori v. Airborne Freight Corp., 426 Mass. 629, 631 (1998), and as “not eliminatfing] the physical-harm requirement but expand [ing] the range of symptoms that may provide the type of objective evidence to prove physical harm.” Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 412 (2002).

 The plaintiff in Sullivan complained of headache, concentration, and reading problems, plus “sleeplessness, gastrointestinal distress, upset stomach, nightmares, depression, feelings of despair, difficulty in driving and working, and an over-all lousy feeling.” Id. at 131. The plaintiff in Kelly experienced “various psychosomatic ailments” — including cramps, shortness of breath, and nightmares — requiring her to take antidepressant medications. Id. at 306. The Kelly Court deemed these symptoms “a close question,” but sufficient to survive a summary judgment motion. Id. at 306.

 Nancy’s two-page letter to Bellagio’s president of February 28, 2006 mentioned no physical or emotional symptoms beyond the Palanos being “very upset” and "very disappointed.” The c. 93A letter of July 10,2006 also does not refer in any way to any physical or emotional damage or symptoms except to repeat that the Palanos were “very upset” and to include a demand of $5,000.00 for “emotional distress.”

 Though the defendant in McClean was “not strictly a public innkeeper,” Id. at 71, the McClean Court noted, in reliance on numerous foreign hotel cases, that “[tjhe obligations arising out of the relationship existing between the plaintiff and the defendant have been frequently stated and have become well settled.” Id. McClean listed those obligations:
The plaintiff was a guest of the defendant, and the latter was bound, if not expressly then impliedly, by the terms and conditions of its contract with the plaintiff to accord him decent and humane treatment and to see to it that its agents and servants did not abuse or insult him, or unnecessarily subject him to any conduct which would cause him physical discomfort, humiliation or distress of mind or which would imperil his safety. The plaintiff was also entitled to the exclusive use and enjoyment of his room during the period for which it was hired [with some exceptions]....
Id. See also Frewer, supra at 504.

 The Palanos would not, of course, be eligible for emotional distress damages on both this count and the count for negligent infliction of emotional distress.

 More broadly, emotional distress damages might also be available for breach of contract when the nature of the contract is such that emotional distress is a reasonably foreseeable consequence of a breach. See, e.g., Sullivan v. O’Connor, 363 Mass. 579, 587 (1973) (“[Tjhere is no general rule barring [the potential recovery of emotional distress damages] in actions for breach of contract. It is all a question of the subject matter and background of the contract....”); St. Charles v. Kender, 38 Mass. App. Ct. 155, 159 (1995).