Wilkins, Douglas H., J.
On October 25, 2011, the plaintiff, Steven J. Palumbo, filed a complaint for protection from harassment against Robert Tusino pursuant to G.L.c. 258E. With both parties represented by counsel, the Court held an evidentiary hearing on November 7 and 8, 2011, at which it heard testimony from six witnesses, received seven exhibits into evidence and heard oral arguments. After hearing and upon consideration of the parties’ written submissions, the request is DENIED.
BACKGROUND
The plaintiff is a resident of Milford, Massachusetts, residing at 18 Parkhurst Street. The defendant is also a Milford resident and an officer in the Milford Police Department. The two are related by blood, in that the plaintiffs father is a first cousin of the defendant’s grandfather. Before the incidents involved in this lawsuit, the two knew each other and were cordial, but not friends.
The plaintiff claims four instances of harassment by the defendant. I also discuss one other incident that allegedly would support the complaint but was not included in the plaintiffs affidavit because it involves a pending criminal matter.
January 16, 2011
On January 16, 2011, the plaintiff went to the Milford Police Station seeking some documents relating to a restraining order he obtained against a woman who lived in Holliston. After some initial discussion with the dispatcher, Jay Covino, the plaintiff met with the defendant, who directed him to the Holliston Police Department. The plaintiff went to Holliston, where police officer Sierra Ryan told him that the Holliston Police Department did not have the records. He returned to the Milford Police Station where he again spoke to the defendant. The plaintiff was angry. Upon learning that the Holliston Police Department had observed that the registration had expired on the plaintiffs truck and that Officer Ryan had told the plaintiff to take his truck home because it was not registered, the defendant issued a citation to the plaintiff and ordered the truck impounded. The truck was towed. The defendant demanded that the plaintiff leave the station.
That much is uncontested. The rest of what happened on January 16 is hotly contested. The plaintiff testified that, during the first encounter, the defendant greeted him with “what the hell do you want,” said he couldn’t provide the requested information and advised that the plaintiff should go to Holliston. The plaintiff testified that, when he returned, the defendant said “you think you’re a tough guy” and “you want to hit me, go ahead”; that the defendant threatened to arrest the plaintiff immediately if he did hit him; and that, when asked why he was doing this, the defendant swore at him, told him to get out of the station and to go to Alaska. The plaintiffs affidavit also claims that the defendant bumped him with his chest more than once.
The defendant denied using profaniiy. He testified that he agreed with the approach of Holliston Officer Ryan to exercise discretion and warn the plaintiff about the expired registration rather than impound the vehicle. He stated, however, that he viewed the plaintiffs return to the Milford Police Station as a violation of Officer Ryan’s instruction to drive the truck home.
After the plaintiff left the station, his mother and father went back to talk to the defendant. The defendant was angry and told them that the plaintiff was going all over town and bad-mouthing him with profane language. He acknowledged telling the plaintiff that he should move to Alaska.
The Milford Police Department keeps “tapes” of electronic cameras recording events in the public lobby of the police station, among other places. The defendant testified that he had no video of the January 16 or January 30, 2011 events, “as hard as I tried to get it.” This exaggeration undercuts the defendant’s credibility to a degree. Milford Police Chief Thomas J. O’Loughlin testified that no one had asked for a copy of the tape. I credit Chief O’Loughlin. Indeed, had the defendant made any substantial effort to obtain the tapes, he would have learned that, according to standard policy of the Milford Police Department, the tape was eventually re-recorded in the ordinary course and the January 16 recording is no longer available.[1]
In resolving the conflicting testimony regarding the two January 16 encounters, the testimony of Milford Police Dispatcher Jay Covino is crucial. Mr. Covino had a view of the plaintiff and defendant on that day and observed no physical contact between them. He testified that he heard some raised, but not intensely loud, voices. He was not in position to hear everything that was said and could not verify that the defendant spoke no obscenities. He did confirm that the defendant told the plaintiff to get out of the station and said “I don’t care” toward the end of the second encounter, *126 in response to the plaintiffs statement that he might have to walk home. The plaintiffs contemporaneous texts, supported by his mother’s testimony, reflect the defendant’s anger and use of profanity. I conclude that both parties made rude and uncivil remarks which may have included profanity, but that there was no substantial physical contact or threats of physical harm or even of unwarranted legal action.
The plaintiff asserts that the defendant was motivated by jealousy over the plaintiffs education[2] and financial success. I find this explanation incredible. The defendant has pursued his police career with distinction and received many commendations. He also is financially well-off, having inherited two houses and owning two others.
The plaintiff also contends that the defendant was motivated by a desire to retaliate or intimidate the plaintiff, because of information the former allegedly possesses regarding the defendant’s drug use. When information in the form of texts from the plaintiff came to the defendant’s attention on January 17, however, the defendant responded by notifying Chief O’Loughlin immediately and subjecting his alleged involvement to scrutiny. Inquiries to the state police and other drug enforcement agencies confirmed the absence of any investigation involving the defendant. On the other hand, the plaintiff has acknowledged his own involvement in such matters and has invoked his Fifth Amendment rights when asked for certain details. His anger and desire to take action against the defendant for the events on January 16, 2011, are evident in the testimony of several witnesses and his excitable demeanor on the witness stand. Also relevant is his incentive to create issues that he may use in defending the criminal charges against him.
The definition of harassment does not include the defendant’s lawful exercise of discretion, even though implemented in an antagonistic, angry and unnecessarily unhelpful manner during two related encounters initiated by the plaintiff on January 16, 2011. The facts do not go further than that. I find that the plaintiff has not proven by a preponderance of evidence that an instance of “willful and malicious conduct’’ of the type described in G.L.c. 258E, §1, occurred on January 16, 2011.
January 23, 2011
The plaintiff testified he was arrested on January 23, 2011, without a warrant, without probable cause, and without granting permission for the police to enter his house. The defendant was among three police officers making the arrest. The plaintiff also testified that the defendant slammed his head into a wall, making a crack in the wall and breaking his nose. The plaintiff states that pictures exist of the injuries caused by the defendant during the arrest, but did not produce them. The booking photographs introduced at trial do not show apparent external injuries. The defendant asked the plaintiff whether he wanted medical assistance; the plaintiff declined. His complaint and affidavit do not claim the January 23 incident as an instance of harassment.
The omission in the plaintiffs affidavit of any reference at all to his arrest is striking. It is only partially explained by the pending criminal charges, since he testified at trial about the incident even though the charges were still pending. In light of my other findings and the omission of this incident from the complaint, it is not necessary to determine whether the events of January 23, 2011, constitute an instance of willful and malicious conduct aimed at the plaintiff with the intent to cause fear, intimidation, abuse or property damage within the meaning of G.L.c. 258E, §1, because the plaintiff would still fall short of the required three incidents.
January 30, 2011/February 3, 2011
The plaintiffs affidavit alleges that defendant learned “(o]n or about January 30, 2011,” that plaintiff had information about Tusino’s alleged involvement with controlled substances. It alleges that the defendant arranged a meeting with the plaintiff at the police station. At trial, after reviewing text messages, the plaintiff stated that the date of the meeting was February 3, 2011.[3] The defendant flatly but nervously denied that any such meeting occurred.
In resolving this conflicting testimony, I rely heavily upon the testimony of Milford Police Officer David Villani and the contemporaneous documentary evidence provided by copies of text messages in evidence and discussed by Officer Villani. Officer Villani is a friend of the plaintiff and colleague of the defendant. He appears to have had no motive other than to defuse the personal conflict between the plaintiff and defendant arising from the January 16, 2011, incident. Caught to some extent between the two parties, he nevertheless testified forthrightly to facts that may have put him in an uncomfortable position. Portions of his testimony helped each side and showed him to be a neutral observer and fair reporter of the events.
Officer Villani testified, and I find, that he set up a meeting at the police station between the plaintiff and defendant on February 3, 2011, and that both of them subsequently confirmed that the meeting had taken place. Officer Villani viewed the purpose of the meeting as an effort to see if the two could get along, not to discuss issues of controlled substances. Prior to the meeting, the plaintiff was angry over the January 16, 2011 events and told Officer Villani that “he was going to get the great Robert Tusino” and threatened to go to the newspapers with information about the defendant’s alleged drug use. The plaintiff showed Officer Villani an unspecified piece of paper with a copy of the defendant’s name on it, allegedly evidencing the latter’s involvement with illegal controlled substances.
I find that a meeting between the parties in fact did occur on February 3, 2011. The plaintiff asserted in *127 his affidavit that the meeting concerned the information that he allegedly had about the defendant’s illegal acts involving controlled substances. At trial, he testified that the purpose of the meeting was to discuss events that occurred during the defendant’s arrest of the plaintiff at his home for stalking and possession of mace. Confronted with the discrepancy, he claimed that the defendant changed the purpose of the meeting. Neither of these purposes is consistent with Officer Villani’s testimony. The inconsistencies in the plaintiffs story undermine any strong reliance upon his testimony about this meeting.
With no testimony from the defendant on the content of the meeting and a questionable account from the plaintiff, it is hard to draw a conclusion as to what the parties said to each other on February 3, 2011. The plaintiff testified that the defendant threatened him and advised him to back off from his accusations regarding alleged drug use or the defendant would ruin him. I do not credit that testimony, because the defendant himself reported the information regarding alleged drug use to Chief O’Loughlin and subjected himself to investigation, which has not produced any evidence of wrongdoing. I infer that the parties did have another rude and angry discussion with raised voices on February 3, but that the conduct did not sink to the level of willful and malicious conduct aimed at the plaintiff with the intent to cause fear, intimidation, abuse or property damage.
September 14, 2011
It appears that, for many months, both parties stayed out of each other’s way. The plaintiff was driving on Exchange Street in Milford on September 14, 2011. The defendant pulled up behind him at a light in a Milford Police cruiser. There is no contest that those facts occurred. Nor is there a contest that Exchange Street turns into Central Street and that there is a town gas fueling facility at the comer of Central Street and Depot Street.
The plaintiff testified that the defendant was in an adjoining lane, ahead of him, and that the defendant waited for him to pass, activated his blue lights, pulled in behind him and then stayed behind him very close, just a few feet from the rear of the vehicle. He stated that the defendant almost hit him when he had to stop for a car that pulled out of a parking lot. He stated that the defendant then pulled into a parking lot, but later went to his home and was there when he arrived. The latter point received some support from the plaintiffs mother, who stated that she saw the defendant drive by her son’s home on two occasions, although on cross-examination she stated that she did not recognize the officer who drove by the second time. The defendant’s presence at the plaintiffs address could be significant, because he was assigned to sector D, where he worked 99% of the time, while the plaintiff lived in sector A.
The defendant stated that after he pulled in behind the plaintiff, he continued on to the town’s refueling facility and filled his cmiser with gas. He rebutted the plaintiffs claim that he opened up a laptop, as the computer in his cmiser does not open like a lap top.
I find the defendant’s view more credible, as substantial time had passed without incident since the events of January and February, there is no reason why the defendant would suddenly go looking for trouble and the innocent explanation for the defendant’s presence on Exchange Street — that he was heading for the town fuel depot — is more credible.
October 11, 2011
The plaintiff claims that, at about 9:33 P.M. on October 11, 2011, he was sitting at his garage door smoking a cigar in the dark. He heard a vehicle and states that he saw the defendant driving approximately 10 to 15 miles per hour. He claims that the car then accelerated, drove past and then stopped abmptly in the middle of the street, with the defendant watching the plaintiff in his rear-view mirror for three or four seconds before accelerating quickly, skidding in the sand.
The defendant flatly denied doing this. He produced a daily dispatch log and a police duty roster, explained by Chief O’Loughlin, showing that he was off duly that night. He testified that he was with his girlfriend in Millbuiy all night and was not in Milford at the time. After hearing this testimony, the plaintiff equivocated on whether this incident happened on October 11, 2011.[4]
I am not convinced by a preponderance of evidence that, whatever the plaintiff observed, the defendant came by his house on October 11, 2011. Moreover, the plaintiffs garage is approximately 10 yards from the street. It was dark. The plaintiff claims that his lights (apparently activated by a motion sensor) went on as soon as he moved toward the street. The plaintiff at best had a poor opportunity to observe who was driving the car and likely had an insufficient view, given the distance and lighting conditions. There is also no apparent explanation why the defendant would, after months without confronting the plaintiff, resume allegedly harassing conduct on September 14 and October 11, 2011. The only new development since February appears to be the imminence of the trial on the criminal charges for which the plaintiff was arrested on January 23. This timing makes the plaintiffs motives suspect. The plaintiff also had a significant memory lapse as to this incident on the stand. He has not proven the October 11 incident by a preponderance of evidence.
DISCUSSION
To prevail on a claim under the anti-harassment statute, a plaintiff must show that he or she “suffer[s] from harassment.” G.L.c. 258E, §3(a). The legislative history of c. 258E discloses an intent to expand the *128 categories of victims entitled to protection from harassment beyond those with relationships covered by G.L.c. 209A, while “implementing] a standard higher than that required for the issuance of an abuse prevention order.” Elissa Flynn-Poppey & Stefanie Guiliano Abhar, Chapter 258E Harassment Prevention Orders — Balancing the Rights of Victims and Defendants, 94 Mass.L.Rev. 23, 23-25 (2011). The Legislature chose a higher and narrower threshold over competing, broadly-drafted proposals, because of its concern that the statute would be misused for frivolous reasons or for revenge, including revenge against law enforcement officers. Id. at 24-25, 26.
The statute defines “harassment" as follows:
“Harassment,” (i) 3 or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property; or (ii) an act that: (A) by force, threat or duress causes another to involuntarily engage in sexual relations; or (B) constitutes a violation of section 13B, 13F, 13H, 22, 22A, 23, 24, 24B, 26C, 43 or 43A of chapter 265 or section 3 of chapter 272.
G.L.c. 258E, §1.[5] The plaintiff claims harassment under clauses (i) and (ii) (B). In evaluating these claims, I interpret the “acts” prohibited by c. 258E to include harassing speech.[6] This conclusion reflects the incorporation in clause (ii)(B) of statutes (e.g., G.L.c. 265, §§43, 43A) that criminalize harassing conduct in the form of speech or statements. It is also consistent with the construction of analogous statutes. Commonwealth v. Welch, 444 Mass. 80, 89-90 (2005) (construing G.L.c. 265, §43A, consistently with G.L.c. 265, §43, and G.L.c. 151A, §25, to include harassing speech).
The claim under clause (ii) (B) rests upon allegations of criminal harassment under G.L.c. 265, §43A. Criminal harassment occurs when a person “willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress.” Id. Given the great similarity between this definition and the wording of clause (i), it is open to question how, if at all, the cross-reference to G.L.c. 265, §43A, affects the scope of acts falling within the definition of harassment. It has been argued that the test for criminal harassment under G.L.c. 265, §43A, is actually lower than the clause (i) standard, because a c. 258E plaintiff must prove an “intent to cause fear, intimidation, abuse or damage to property.” Chapter 258E Harassment Protection Orders, supra, Mass.L.Rev. at 30.[7]
There is no need to resolve all aspects of this question in this case. In Welch, 444 Mass. at 89-90, the Supreme Judicial Court interpreted the phrase “pattern of conduct or series of acts” in G.L.c. 265, §43A, to require proof of three or more incidents. For purposes of this case, it is sufficient that the claim of a §43A violation does not eliminate the need for a c. 258E plaintiff to prove at least three incidents.
Based upon the findings I have made, the plaintiff has not proven three or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property. Given the high threshold set by G.L.c. 258E, he has failed to show entitlement to a harassment order.
That is the end of the matter. The plaintiff asks the Court to go further, perhaps banking on the fact that chapter 258E is a new statute,[8] not yet construed by the courts. But the statute’s language and legislative history establish significant prerequisites, discussed above, to any c. 258E-based challenge to rude, uncivil or profane conduct in general, let alone by police officials — -just as the Massachusetts Civil Rights Act contains limits to prevent the “creation of a vast constitutional tort” and does not reach verbal “posturing” and “(h]uffing and puffing.” See, e.g. Kennie v. Natural Resource Dept, of Dennis, 451 Mass. 754 (2008), quoting Ayasli v. Armstrong, 56 Mass.App.Ct. 740, 761 (2002) (Rapoza, J., dissenting). The limits of chapter 258E, as applied in this case, make clear that this new statute provides no easy shortcut to more traditional and appropriate modes of challenging police conduct, such as defending criminal proceedings or meeting the burden of proving claims under other civil statutes more suited to the cause.
ORDER
Judgment shall enter for the defendant dismissing the complaint for harassment.
Dated: November 10, 2011
(as revised November 16, 2011[9])

There is no suggestion that, prior to the re-use of the tape, the Milford Police Department had any reason to know that retaining a copy of the tapes would be useful in a proceeding such as this one.

The plaintiff claims that the defendant was jealous of his “Ivy League education,” when the plaintiff went to Vanderbilt. Confronted with this discrepancy, he said that Vanderbilt is known as the Harvard of the South and that what he meant was that the defendant perceived Vanderbilt to be Ivy League.

Nile defendant claims that there was a discrepancy between the affidavit and the trial testimony, but the affidavit cites January 30 as the date on which the defendant learned about the plaintiffs information, not the date of the meeting. The plaintiffs testimony is that it was “roughly" January 30.

I place no weight upon the printouts showing expenditures on the defendant’s credit or debit card, because those documents are at least equally subject to an interpretation that the expenditures occurred on Sunday, October 9, or on Columbus Day, October 10, before being posted on the next business day, October 11, 2011.

For purposes of c. 258E, abuse is defined as: “attempting to cause or causing physical harm to another or placing another in fear of imminent serious physical harm.” G.L.c. '258E, §1.

Most of the plaintiffs case revolved around the defendant’s alleged speech. Without challenging the defendant’s speech, it is doubtful that the plaintiff could even have alleged the three necessary incidents.

If this is true, then the incorporation of G.L.c. 265, §43A, into clause (ii)(B) might appear to undo the high standard in clause (i), but the resulting internal conflict within the statute makes it at least questionable whether one should read the lower standard of §43A (if it is indeed lower) into c. 258E’s definition of harassment, despite what a literal reading of clause (ii)(B) might suggest.

G.L.c. 258E was enacted by St. 2010, c. 23, effective May 10, 2010.

The November 16, 2011 revision consisted solely of corrections to punctuation, citation form and grammar, without any substantive changes.