Wilkins, Douglas H., J.
The plaintiff, Tom Deneen (“Plaintiff’ or “Deneen”) brought this action for injunctive relief to challenge action taken by the Worcester State College (“College”) and its Vice President (the “President” or “Ms. Ashley”). The defendants have filed a Motion for Summary Judgment (“Motion”), which Deneen opposed. After hearing, the Motion is DENIED.
BACKGROUND
The facts established by the Parties’ Rule 9A(b)(5) statement, along with inferences drawn in favor of the plaintiff as opposing party, are as follows. These facts are to be taken as true in this case, pursuant to Mass.R.Civ.P. 56(d), except for those facts in italics, which are taken as true only for summary judgment purposes, because inferences must be drawn in favor of the plaintiff.
The College’s real property and physical structures are held in the name of the Commonwealth and are managed by the Division of Capital Asset Management and Maintenance. Its residence halls are owned and operated by the Massachusetts State College Building Authority. Pursuant to statutory authority, the College has promulgated rules, regulations and a conduct code that addresses student behavior on campus, including a Harassment Policy and a Disruption of Administration Policy.
The College prosecutes violations of its Standards of Conduct through a student-administered Judicial Process or, alternatively, a process guided by professional administrators. The Student Handbook (the “Handbook”) describes the rules. It asserts “jurisdiction over conduct that adversely affects the College community and/or the pursuit of its objectives, wherever the conduct occurs.” Part II sets forth certain “misconduct” that subjects a “student” to the disciplinary sanctions outlined in the “Judicial Policies.” Part III sets forth certain “judicial policies and procedures,” which contemplate a hearing when the matter cannot be resolved informally. The Student Handbook (at 90) defines a “student” as including, among others, “[p]ersons who are not officially enrolled for a particular term but who have a continuing relationship with the College ...”
Deneen was admitted to the College on March 19, 2004 as a chemistry major with advanced standing. He was a student at the College in good standing on August 22, 2007. A Major Evaluation Form dated February 16, 2007, answered “no” to the statements that his major GPA was 2.00 or higher and that all requirements had been fulfilled. He had completed 96 of the 120 credits he needed to graduate by February 8, 2007 and 99 credits by August 12, 2008. However, after August 22, 2007, he enrolled in only one additional class at the College. There is no evidence that he was dismissed as a student at the college.
On or about December 31, 2007, Deneen sent a card postmarked December 31, 2007 to faculty member Dr. Anne Falke, addressed to “Stateworker Falke” and referred to “Nazi fiends.” On or about February 28, 2008, Deneen wrote a letter to the College’s Division of Graduate and Continuing Education, referring to “animal people,” “child molesters, cheaters, liars, state worker sleazes,” “brutalizing, hideously ugly shake down goons,” apparently referring to people in the business office. The letter also referred to “theTony Soprano goons in the business office and the crackho types in the president’s office who support them.”
As a result, the College charged the plaintiff with violation of its Harassment Policy and violation of its Disruption of Administration Policy. On April 4, 2008, after a hearing which Deneen did not attend, the College’s Judicial Board found the Plaintiff responsible for the policy violations and sanctioned him by suspending him from campus through December 31, 2008 and by issuing a No Trespass Notice beginning January 1, 2009 “until such time as you set up and attend a meeting with Maureen Shamgochian, Associate Vice President for Academic Support and Faculty Development, and Dan Morse, Deputy Chief, College Police.” Deneen appealed. Following an appeal hearing, which he did not attend, the College denied his appeal on April 28, 2008. The suspension has expired.
On or about April 15, 2009, the College issued a second Trespass Order against the Plaintiff on the *582 basis of his alleged conduct at the College in a meeting between the Plaintiff and Dr. Lori Dawson, then Interim Associate Vice President of Academic Affairs. The meeting occurred on April 14, 2009. The Police Chief and Deputy Chief were both present.
Dr. Dawson’s affidavit states that she called the meeting “to discuss [Deneen’s] academic, financial and judicial issues at the College. ”A factfinder could draw the inference that, because he had such “issues at the college, ” Deneen was a student within the meaning of the Handbook, because he was a person “not officially enrolled for a particular term but who [has] a continuing relationship with the College ...”

Dr. Dawson’s affidavit states that, when she attempted to convene the meeting on April 14, Deneen immediately began to interrupt her in a loud voice. When she attempted to show him copies of his transcripts, he pushed the papers back at her without looking at them. He allegedly made loud and agitated statements to the effect of “how is this going to help me graduate?” He then picked up his belongings and allegedly threw the door open so hard that it hit the wall and slammed shut on its return to the doorframe. The meeting was very short, lasting a few minutes, or 5 to ten minutes at most. The three College employees present characterized Deneen’s behavior as belligerent, disruptive and both verbally and physically threatening. These allegations are contested.

As defendant Ashley put it in her letter of June 5, 2009, “following the meeting held on April 14, 2009, a Notice of Trespass was filed by the WSC Chief of Police. This notice is [a] continuation of a previous Notice.” In his opposition to the Motion, Deneen asserts that the College denied him due process on April 15, 2009, and questions the credibility of Dr. Dawson and the allegations in her affidavit.
More than four months later, a letter to Mr. Deneen from Peter H. Tsaffaras, the Acting General Counsel of the Massachusetts Department of Higher Education, dated August 26, 2009, identified three issues that “prohibit you from continuing your pursuit of a Bachelor’s degree in Chemistry at Worcester State College.” One was a No-Trespass [sic] notice, dated April 15, 2009, issued as a result of Deneen’s alleged actions on April 14, 2009 (described below). The letter suggested “that you utilize the appeal process, observing all procedural and technical requirements.” Second, the letter identified 7 courses in Deneen’s major, plus 9 Fine Arts credits that Deneen would have to take. It pointed out that Deneen’s grade point average was below the minimum 2.0 necessary and suggested that Deneen “seek an appointment with an academic counselor” to determine whether and how Deneen could continue toward graduation. Third, the letter cited an outstanding debt of $1,221.11 that, the College alleged, Deneen knowingly incurred. The College’s policy prohibited a student to register without paying outstanding debts to it or entering into a payment plan. The letter suggested that Deneen “enter into a repayment plan." President Ashley had sent letter with similar content on June 5, 2009 and on prior occasions as well. From these letters, a factfinder could conclude that Deneen, though not enrolled in any courses, had a continuing relationship with the College. The reference to procedures for appealing the “No Trespass” Order also permits a factfinder to infer that the Student Handbook still applied.
President Ashley also sent a letter to Mr. Deneen on September 25, 2009, “to reiterate how Worcester State College stands ready to assist you as explained by Mr. Tsaffaras” of the Department of Higher Education. The letter again referred to three items: appeal of the No Trespass Order, review of his academic requirements to complete the degree requirements and development of a payment plan. Again, the letter may permit a factfinder to conclude that Deneen was a student, entitled to the procedures afforded by the Handbook.
By email dated October 6, 2009, Deneen asked to appeal the No Trespass Order to the College’s Chief of Police. The Chief, of course, had been a witness to the events on April 14,2009. In Deneen’s email requesting an appeal from the April 15 order, he claimed that he did nothing at the April 14 meeting that would warrant a no-trespass order.
On October 19, 2009, the Chief replied: “Your appeal has been denied on the basis of [a] conversation I had with office of Vice President of Academic Affairs. Attached please note that the No trespass order has been changed to the administrative action of Persona-non-Grata.” [Sic.] The Persona-non-Grata order stated that Deneen “is forbidden to enter or remain on property owned, leased or used by Worcester State College” because “a number of alleged [sic] incidents over the past several months related to inappropriate behavior resulting in staff feeling threatened and requesting continuance of this order.” (Emphasis added.) The order stated that it “is in effect until notification of dismissal by the issuing college/university.” President Ashley sent Deneen a letter dated October 21, 2009, advising him “that I concur with the decision of the Chief of Campus police to deny your appeal to have the No Trespass Order lifted. The decision followed a thorough review of your case and conversation with the office of Academic Affairs who referred to a number of alleged incidents that led to inappropriate behavior on your part resulting in staff feeling threatened.”
The plaintiff filed the complaint in this case on July 9, 2010. He alleges that he is still a student at the College; that he commented on a public issue in his January 25, 2008 letter to Ms. Faulk; that the College’s decision of April 4, 2008 punished him for exercising his right of free speech; thatthe April 15, 2009Persona-non-Grata Order lacks a valid basis; and that the Plaintiff has not broken any laws and wants to complete his chemistry degree. The complaint asks for “injunctive relief. . . that [the] No Trespass Order and *583 or Persona-non-Grata Order issued by Janelle Ashley and Worcester State College be removed.’’
DISCUSSION
On summary judgment, the moving party has the burden to demonstrate that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Foley v. Boston Hous. Auth., 407 Mass. 640, 643 (1990). The movant may meet this burden by showing that the plaintiff has no reasonable expectation of producing evidence on a necessary element of his case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party meets the burden, the opposing party must advance specific facts that establish a genuine dispute of material fact. Id.
There are material issues of fact here. First, a factfinder could find that Deneen was a “student” under the Handbook, because he and College officials continued to recognize a “relationship” between them. The plaintiff therefore may be found to have reasonable expectations that he would receive the process and rights provided by the Handbook.
Though not bound to do so, a factfinder could also find that the Handbook became part of Deneen’s agreement with the College. See Shaer v. Brandeis University, 432 Mass. 474, 476, 478 (2000) (referring to college’s student handbook, noting that “the parties do not dispute the fact that a contractual relationship exists between Schaer and Brandeis” and applying specific sections of the handbook as construed under the “reasonable expectation” standard). A “student,” as defined in the Handbook, may have a reasonable expectation that the College would enforce the Handbook, as evidenced by, among other things, the mandatory wording of the Handbook itself, the inclusion of disciplinary consequences and procedures in the Handbook and the fact that the College did, in fact, enforce the Harassment policy in the Handbook. Such an expectation may give rise to a contractual obligation to follow the handbook. Cf. Ferguson v. Host Int’l, Inc., 53 Mass.App.Ct. 96, 101-02 (2001) (employee manual enforceable to the extent it instills a reasonable belief in the employee that the employer will adhere to the manual’s policies). It may also give rise to a “property right” protected by the Due Process Clause. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972) (“Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits”).[1] There is thus a dispute of fact whether the Handbook created contractual or other property rights upon which Deneen may rely.
Second, there is a factual question whether the procedure leading to the second No Trespass order and the “appeal” to the Police Chief satisfied the applicable contractual or constitutional process due to Deneen. He received no hearing and, apparently, had no opportunity for input (beyond his written opposition) before the second No Trespass order was issued. The President characterized the April 15 No Trespass order as a “continuation of a previous Notice,” namely the earlier No Trespass order. The first No Trespass order, however, was issued by a Judicial Board only after hearing and compliance with the procedures set forth in the Handbook. According to Defendant Ashley’s letter of June 5, 2009, the “Notice of Trespass was filed by the WCS Chief of Police.” The Handbook arguably would require a Judicial Board or other appropriate entity, not the Chief of Police. It appears, moreover, that the Chief, though a witness, issued the persona non grata letter and later heard the appeal. Under the Handbook, at least,[2] appeals are not to the same entity that imposed the sanction, but to the Appellate Board, consisting of at least three persons. It remains for trial to determine whether a witness employed by the College may participate in imposing a sanction for misconduct under the Handbook and then affirm himself upon appeal — or whether the College follows the traditional separation of roles of witness, decision maker and appellate reviewer. It also remains for later determination whether such a process, if authorized by College procedures, complies with due process, which includes the following:
[the] right to have [his] application heard “in a meaningful manner.” Matter of Kenney, 399 Mass. 431, 435 (1987) (‘The fundamental requisite of [procedural] due process is an opportunity to be heard at a meaningful time and in a meaningful manner”). See Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991), quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990) (“ ‘procedural due process’ is simply ‘a guarantee of fair procedure’ ”).
Kennie v. Department of Natural Resources of the Town of Dennis, 451 Mass. 754, 761 n.14 (2008).
Third, there is a dispute about what actually happened on April 14, which not even the College has finally resolved. Deneen claimed that “[n]othing happened to justify a No Trespass order and I would like to appeal it.” The Chiefs email to Deneen cites no acts to justify the no trespass order, but states that the appeal was “denied on the basis of conversation I had with office of Vice President of Academic Affairs.” That post-sanction conversation would not comply with the procedures for an appeal under the Handbook, if applicable, which limits consideration to the record below. The Persona-non-Grata order itself, and the President’s October 21, 2009, letter refer only to “a number of alleged incidents over the past several months related to inappropriate behavior resulting in staff feeling threatened and requesting continuance of this order.” (Emphasis added.) That is troubling in two *584 legal respects. For one thing, the Handbook requires proof by a preponderance of evidence that the offenses actually occurred, rather than proof of “alleged incidents.”
More troubling, it is entirely unclear what the chief meant by a “number” of incidents “over the past several months.” Deneen’s original offenses occurred in 2008; there was only one incident on April 14; and, for all that appears in the record so far, Deneen’s other activities from April to October arguably constituted pure speech — petitioning public officials to reinstate him. Many of his petitions went to officials outside the College proper. Others were arguably non-abusive arguments to defendant Ashley. The College has not foreclosed the factual possibility that the Persona Non Grata order unlawfully retaliated against Deneen for a “number” of incidents in the months before October 2009, in which Deneen merely exercised his right of free speech and right to petition the government for redress. See generally Langton v. Secretary of Public Safety, 37 Mass.App.Ct. 15, 18-20 (1994) (reversing summary judgment because of issues of fact concerning reprisals against an inmate for complaints about prison conditions).
Fourth, it is clear that the plaintiff engaged in some measure of speech even on April 14. The purpose of the April 14 meeting was communication: “to discuss [Deneen’s] academic, financial and judicial issues at the College,” according to Dr. Dawson. Whether Deneen’s non-communicative conduct rose to a level warranting action apart from the content of his speech (for which he may not be punished under the First Amendment and Article 16) is a disputed issue of fact. That question may or may not be presented in a context where the Chief considered a “number” of incidents “over the past several months” that constituted pure speech. There is a material dispute whether the College unlawfully counted protected speech against Mr. Deneen. See generally O’Brien v. Borowski, 461 Mass. 422-25 (2012) (speech may not be punished under G.L.c. 258E unless it amounts to “fighting words” or “true threats”).
It may well turn out that the College acted well within its rights. See Roman v. Trustees of Tufts College, 461 Mass. 707, 715-16 (2012) (upholding summary judgment on a free speech claim where the college based its exclusion of the plaintiff from lecture upon the content-neutral ground of failure to pay a bill, which “served [Tufts’] interest in fiscal integrity and was unrelated to the content of [plaintiffs] speech”). It may also be that Deneen went beyond constitutionally protected speech. O’Brien, 461 Mass at 428 (‘There is no appreciable amount of protected speech where the speaker both intends to cause intimidation, abuse, damage to property, or fear of physical harm or property damage, and does in fact cause one of these alternatives”). Nothing in this decision constitutes a finding that the College or Deneen did anything wrong. The Court decides only that the plaintiff is entitled to a non-juiy trial on his injunctive claims against the College.
CONCLUSION
For the above reasons, the Defendants’ Motion for Summary Judgment is DENIED.

 A due process claim requires proof of a (1) deprivation (2) of liberty or property, (3) without due process and (4) a lack of available remedies still open to the plaintiff. See Temple v. Marlborough District Court, 395 Mass. 117, 122, 126 (1985).

 Since the case must be tried, it is not necessary to decide at this time whether Due Process also requires this type of procedural protection. The key procedural due process test is set forth in Doe 3844 v. Sex Offender Registry Board, 447 Mass. 768, 775 (2006), quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976):
Three factors must be weighed in determining procedural due process: “First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including .. . the fiscal and administrative burdens [involved].”